[Civ. No. 62667. Second Dist., Div. Four. Apr. 23, 1982.]

STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff and Respondent, v.
JOSIE DOMINGUEZ et al., Defendants and Appellants.

**COUNSEL**

Margolis, McTernan, Scope, Sacks & Epstein and John Rice-Trujillo for Defendants and Appellants.

Portigal & Hammerton and Allan Portigal for Plaintiff and Respondent.

**OPINION**

**KINGSLEY, J.**—Defendants appeal from an adverse judgment in an action to determine insurance coverage. We affirm.

On February 23, 1977, defendant McIlvain shot and killed David Dominguez. McIlvain was prosecuted and convicted of first degree murder and his conviction was sustained on appeal to this court.

(2 Crim. No. 32913.) Thereafter the other defendants filed a wrongful death action against McIlvain and other persons for that killing. Plaintiff insurance company was the insurer of McIlvain under a policy which, unless coverage was excluded under the provisions hereinafter discussed, required it to undertake the defense of the wrongful death action and pay any judgment thereon rendered against McIlvain. Plaintiff, contending that its policy did not cover the killing of Dominguez, has undertaken defense of the wrongful death action under a reservation of rights.[1] Plaintiff then brought the present declaratory relief action to determine its obligations under the policy. The trial court decided in favor of plaintiff and this appeal followed.

The policy herein involved provides, under the heading of "Exclusions," as follows: "This policy does not apply ... to bodily injury or property damage which is either expected or intended from the standpoint of the insured." Section 533 of the Insurance Code provides: "An insurer is not liable for a loss caused by the willful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." It is the contention of plaintiff that, since the killing was intentional, the statute and the exclusion clause relieve it of liability. It is the contention of defendants that, since their complaint in the wrongful death action is based on allegations of negligence, the statute imposes liability on the plaintiff.

I

Defendants' contention here is that, since even an intentional tort may, in a civil action, be treated as negligent, it was the duty of plaintiff to support its declaratory relief action by a showing that the conduct of the insured was nonnegligent. We reject that theory. It is true that an intentional *act* may be an element of negligence because it is the proximate cause of a result and that, in tort actions, a plaintiff injured by the result may sue for damages using language of negligence, but the statute and policy herein involved are an expression of a public policy that a person may not secure insurance against a *wrong* which he intended. If plaintiff has shown an intentional *wrong*, the policy and the statute relieve it of liability.

Defendants, if we understand their position, are arguing that, even if there is a public interest in preventing an insured from recovery for an

[1]As required by *Gray v. Zurich Insurance Co.* (1966) 65 Cal.2d 263 [54 Cal.Rptr. 104, 419 P.2d 168].

intentional result, that interest should not extend to depriving the innocent victims of that result from recovering for *their* loss. The argument is emotionally intriguing, but it overlooks the fact that such victims cannot recover their loss in many cases where the actor was without resources. All that the policy and statute here before us do is to remove the insurance policy from the assets of an actor who has intended the result causing harm.

## II

█ At the trial of this case, plaintiff introduced only the policy and proof of McIlvain's conviction for murder. Defendants argue that that was insufficient proof of McIlvain's intent, since murder in the first degree can exist in some cases without an actual intent to kill. The example suggested to us that of so-called "felony murder" where a defendant may be convicted of first degree murder if, in the perpetration of certain crimes, he accidentally causes death. As a general proposition, that argument has merit and the plaintiff here should, in order to sustain its theory, have gone forward with proof that the murder of which McIlvain was convicted was not a "felony murder." However, in the case at bench, we see no reason to reverse merely to permit plaintiff to amplify its proofs. We take judicial notice of the record that was before us on McIlvain's appeal from his conviction. From that record it is clear that, at no time, did McIlvain contend that the killing of Dominguez was accidental. His sole defense was that he acted in self-defense with the deliberate intent to kill Dominguez to save his own life. That theory the jury at his trial rejected.[2]

## III

█ Finally, defendants contend that the criminal judgment against McIlvain is not binding on them in this case and that it was the obligation of plaintiff to retry, in support of its claim of noncoverage, the entire case against McIlvain.

Admittedly two elements of collateral estoppel exist here: the issue as to McIlvain's intent was common both to the criminal case and to this case, and there is a final judgment in the criminal case. The issue is whether the third element—that of privity—also exists. In a case simi-

---

[2]The parties here seem to assume that had McIlvain been acquitted on his self-defense theory, the policy would have afforded coverage. We need not, and do not, here determine the validity of that assumption.

lar to the case at bench, the Supreme Court ruled, in *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865 [151 Cal.Rptr. 285, 587 P.2d 1098], that, on the facts in that case, plaintiffs in an unlawful death action against the insurer of a man who had killed their decedent, the heirs were not bound by collateral estoppel, even though they were relying on the killer's insurance policy and any defense in an action by the killer against the insurer would be available to the insurer in the heir's action on the policy. However, we do not regard *Clemmer* as controlling here. In *Clemmer* the Supreme Court explained that the tactics of the killer in the criminal case, in withdrawing a potential defense of insanity did not necessarily show that he did not have that defense.[3] Here there is nothing in the record of the criminal trial even to suggest that McIlvain ever had any potential defense that was tactically not raised. His sole case, as we have said above, was that he acted intentionally to save his life by killing Dominguez. On that issue, the judgment rejecting the sole defense was binding as between McIlvain and the plaintiff; it is equally binding on those who here seek to enforce McIlvain's insurance policy.

The judgment is affirmed.

Woods, Acting P. J., and McClosky, J., concurred.

---

[3]The Supreme Court said: (22 Cal.3d at pp. 876-877) "... The record indicates that, after having been adjudged guilty of second degree murder, Dr. Lovelace withdrew his plea of not guilty by reason of insanity. He may well have done so as a result of a determination on his part that the sentence to be served by him under a second degree murder conviction would be preferable to the possible consequences of his prevailing on his insanity pleas, to wit, commitment to a state mental hospital (see Pen. Code, § 1026). For this reason, it cannot be said that Lovelace had the same interests in fully litigating the issue of the willfulness of his act in killing Dr. Clemmer as do the plaintiffs herein. We therefore hold that whereas plaintiffs are subject to any defenses that Hartford would have had against Lovelace, such defenses must be proved by Hartford. Plaintiffs may not be precluded from litigating the issue of willfulness by application of the doctrine of collateral estoppel. [Fn. 8 omitted.]"