[No. S073129. Aug. 9, 1999.]

BENJAMIN R. HORWICH, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
EDWARD ACUNA et al., Real Parties in Interest.

## COUNSEL

Horvitz & Levy, Barry R. Levy, Sandra J. Smith, Jon B. Eisenberg; Barry Bartholomew & Associates and Larry P. Bilbrew for Petitioner.

Carroll, Burdick & McDonough, David M. Rice, Timothy C. Smith; Mayer, Brown & Platt, Alan Untereiner and Kathryn Schaefer for Mercedes-Benz of North America, Inc., as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Law Offices of M. Scott Radovich and M. Scott Radovich for Real Parties in Interest.

Remcho, Johansen & Purcell, Robin B. Johansen, Joseph Remcho, Kathleen J. Purcell, James C. Harrison; and Gina M. Calabrese for the Congress of California Seniors, the Latino Issues Forum, the Greenlining Institute, the Utility Consumer Action Network, the Consumer Attorneys of California and the Proposition 103 Enforcement Project as Amici Curiae on behalf of Real Parties in Interest.

## OPINION

**BROWN, J.**—In this case, we must determine whether Civil Code section 3333.4 (all unspecified statutory references are to the Civil Code), enacted as

part of Proposition 213, precludes a wrongful death plaintiff whose decedent was the uninsured operator of a motor vehicle involved in an accident from recovering damages for loss of care, comfort, and society. We conclude recovery is permissible and therefore affirm the judgment of the Court of Appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

Melissa Acuna was killed in an automobile accident; she did not have personal automobile insurance or any insurance for the vehicle she was driving. Her parents, real parties in interest Edward and Elisa Acuna (plaintiffs), sued the driver of the other vehicle, petitioner Benjamin Horwich (defendant), for wrongful death and, on behalf of Melissa's estate, for survival causes of action.[1]

In his answer, defendant alleged as an affirmative defense pursuant to section 3333.4, subdivision (a)(2) and (3), that Melissa was uninsured at the time of the accident and therefore plaintiffs could not recover damages for the nonpecuniary value of her care, comfort, and society. (See *post,* fn. 3.) Plaintiffs admitted to Melissa's lack of insurance but contended the statutory prohibition only applied to the uninsured owner or operator of the automobile involved in an accident, which they were not. The trial court agreed and granted their motion for judgment on the pleadings.

On defendant's petition for writ of mandate, the Court of Appeal affirmed.

## DISCUSSION

Section 3333.4 was enacted as part of the Personal Responsibility Act of 1996—Proposition 213—approved by the voters in November 1996. As relevant here, it provides:

"(a) [I]n any action to recover damages arising out of the operation or use of a motor vehicle, a person shall not recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages if any of the following applies:

". . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(2) The injured person was the owner of a vehicle involved in the accident and the vehicle was not insured as required by the financial responsibility laws of this state.

---

[1] Only the wrongful death action is at issue here.

"(3) The injured person was the operator of a vehicle involved in the accident and the operator can not establish his or her financial responsibility as required by the financial responsibility laws of this state."[2]

The question here is whether the statute precludes a wrongful death plaintiff who is not the uninsured owner or operator of a vehicle involved in the accident—but whose decedent was—from recovering for loss of care, comfort, and society.[3]

"The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' [Citations.] Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.' [Citation.] Finally, we do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.' [Citation.]" (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420].) We must also consider "the object to be achieved and the evil to be prevented by the legislation. [Citations.]" (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159 [278 Cal.Rptr. 614, 805 P.2d 873].) These guiding principles apply equally to the interpretation of voter initiatives. (*Whitman* v. *Superior Court* (1991) 54 Cal.3d 1063, 1072 [2 Cal.Rptr.2d 160, 820 P.2d 262].)

---

[2]Section 3333.4, subdivision (a)(1), bars recovery of nonpecuniary damages when "[t]he injured person was at the time of the accident operating the vehicle in violation of Section 23152 or 23153 of the Vehicle Code, and was convicted of that offense." Vehicle Code sections 23152 and 23153 forbid driving under the influence of alcohol or drugs or driving with a blood-alcohol level of .08 percent or greater.

Proposition 213 also enacted section 3333.3, which provides: "In any action for damages based on negligence, a person may not recover any damages if the plaintiff's injuries were in any way proximately caused by the plaintiff's commission of any felony, or immediate flight therefrom, and the plaintiff has been duly convicted of that felony."

[3]A threshold question arises whether section 3333.4 applies in wrongful death actions because heirs are limited to recovery for pecuniary damages only. (See, e.g., *Parsons* v. *Easton* (1921) 184 Cal. 764, 773-774 [195 P. 419]; *Valente* v. *Sierra Railway Co.* (1910) 158 Cal. 412, 418-419 [111 P. 95]; see generally, 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 1213, pp. 649-650, and cases cited therein.) In *Krouse* v. *Graham* (1977) 19 Cal.3d 59, 69 [137 Cal.Rptr. 863, 562 P.2d 1022], however, this court referred to "loss of such *nonpecuniary* factors as the society, comfort, care and protection of a decedent" as recoverable in a wrongful death action. (Italics added.) In light of our holding that plaintiffs do not come within the provisions of section 3333.4 because they are not the uninsured "owner [or operator] of a vehicle involved in the accident," we need not resolve, and express no opinion on, this potential inconsistency in the law.

■ The Court of Appeal concluded, and plaintiffs argue, that section 3333.4 only bars recovery when the "injured person" is an uninsured "owner [or operator] of a vehicle involved in the accident . . . ." Since plaintiffs are neither, they do not come within the express terms of the statute. In his briefing, defendant argues the statute applies more broadly. Under his construction, the statute "specifies no limitation on the type of 'person'—that is, the type of plaintiff (e.g., wrongful death or personal injury)—who is restricted to recovery of economic damages." Therefore, "a person" in subdivision (a) bars recovery by *any* person who brings a cause of action "arising out of the operation or use of a motor vehicle." At oral argument, defendant offered a less sweeping interpretation, which nevertheless would preclude wrongful death plaintiffs from noneconomic recovery. (See *post*, p. 280.) According to defendant, his construction best advances the electorate's intent to ease the economic burden on insured motorists and taxpayers and restore balance to our justice system. (See *Yoshioka* v. *Superior Court* (1997) 58 Cal.App.4th 972, 983 [68 Cal.Rptr.2d 553].)

As we have recently noted with respect to other provisions in section 3333.4, "[t]he language is not pellucid." (*Hodges* v. *Superior Court* (1999) 21 Cal.4th 109, 113 [86 Cal.Rptr.2d 884, 980 P.2d 433].) Both "a person" and the "injured person" are subject to different interpretations, some supporting plaintiffs' position and some supporting defendant's. We therefore seek enlightenment in the "legislative history" of Proposition 213.[4] (See *White* v. *Davis* (1975) 13 Cal.3d 757, 775 & fn. 11 [120 Cal.Rptr. 94, 533 P.2d 222].) Considering the electorate's intended goal as reflected in the language of the initiative and in the ballot arguments, we ultimately agree with the Court of Appeal that the controlling language for our purposes is the reference to the "injured person" (§ 3333.4, subd. (a)(2) & (3)), which refers to the plaintiff in the action, i.e., the limitation on the recovery of nonpecuniary damages by "a person" (*id.*, subd. (a)) operates against only a plaintiff who is the uninsured owner or operator of a vehicle involved in the accident.

To begin, this conclusion accords with the "Findings and Declaration of Purpose" of Proposition 213, which states:

[4]Plaintiffs and amici curiae in support of their position request we take judicial notice of ballot pamphlet arguments and the text of the initiative. By separate order, we have granted that request. (Evid. Code, §§ 452, subd. (c), 459; *People* v. *Hazelton* (1996) 14 Cal.4th 101, 107, fn. 2 [58 Cal.Rptr.2d 443, 926 P.2d 423].) Plaintiffs also request we take notice of other, nonofficial election materials as well as materials relating to Assembly Bill No. 432 and Senate Bill No. 31 (1995-1996 Reg. Sess.), the legislative antecedents to Proposition 213. Although we have granted that request as well, these matters were not directly presented to the voters and therefore are not relevant to our inquiry. (Cf. *Hodges* v. *Superior Court, supra,* 21 Cal.4th at p. 118, fn. 6.)

"(a) Insurance costs have skyrocketed for those Californians who have taken responsibility for their actions. *Uninsured motorists*, drunk drivers, and criminal felons are law breakers, and should not be rewarded for *their* irresponsibility and law breaking. However, under current laws, *uninsured motorists* and drunk drivers are able to recover unreasonable damages from law-abiding citizens as a result of drunk driving and other accidents, and criminals have been able to recover damages from law-abiding citizens for injuries suffered during the commission of their crimes.

"(b) Californians must change the system that rewards individuals who fail to take essential personal responsibility *to prevent them* from seeking unreasonable damages or from suing law-abiding citizens.

"(c) Therefore, the People of the State of California do hereby enact this measure to restore balance to our justice system *by limiting the right to sue of* criminals, drunk drivers, and *uninsured motorists*." (Ballot Pamp., Prop. 213: Text of Proposed Law, Gen. Elec. (Nov. 5, 1996) § 2, p. 102, italics added; hereafter Ballot Pamphlet.)

The declaration of purpose focuses the electorate's concern solely on those who have failed to take *personal* responsibility for their actions, including drivers without obligatory liability insurance. According to the plain language of the proposition, the "Civil Justice Reform" effected by section 3333.4 (Ballot Pamp., *supra*, Prop. 213, § 3, at p. 102) is aimed at these individuals and these individuals alone. A wrongful death plaintiff who is neither the uninsured owner nor operator of a vehicle involved in the accident cannot be one who has failed to take personal responsibility because the law imposes no obligation on that person.[5] Nor are wrongful death plaintiffs mentioned in the text of the proposition as subject to its restrictions. (Cf. §§ 1431.2 [eliminating joint and several liability for noneconomic damages in "any action for personal injury, property damage, or wrongful death"]; 3333.2, subd. (2) [Medical Injury Compensation Reform Act limit on noneconomic damage recovery applies when professional negligence "is the proximate cause of a personal injury or wrongful death"]; *Hodges* v. *Superior Court*, *supra*, 21 Cal.4th at pp. 117-118 [terms of Proposition 213 do not reflect intent to include product liability actions].)

Parallel language in section 3333.3, also enacted as part of Proposition 213, supports this interpretation. That section provides: "In any action for

[5]We emphasize that our holding applies only to wrongful death plaintiffs who are neither uninsured owners nor operators of a vehicle involved in the accident. Although we express no opinion on the question because the facts are not before us, it would appear that an heir who is the uninsured owner or operator of the vehicle involved in the accident would come within the intended scope of section 3333.4.

damages based on negligence, a person may not recover damages if the plaintiff's injuries were in any way proximately caused by the plaintiff's commission of any felony . . . ." (See *ante*, fn. 2.) This provision unequivocally identifies "a person" who is barred from recovery as "the plaintiff" in any subsequent action based on injury negligently sustained during the commission of a felony by that plaintiff. Section 3333.4 references the "injured person" rather than "the plaintiff," but under the law the terms are equivalent, or at least without legal distinction in these circumstances.

The ballot arguments in favor of Proposition 213 substantiate the determination that wrongful death plaintiffs do not come within the ambit of section 3333.4. In those materials, the initiative was characterized as a "Limitation on Recovery to Felons, Uninsured Motorists, Drunk Drivers," and the electorate was advised it "[d]enies recovery of noneconomic damages (e.g., pain, suffering) to . . . most uninsured motorists."[6] (Ballot Pamp., *supra*, Summary of Prop. 213, at p. 6.) "A YES vote on this measure means: Uninsured drivers . . . could no longer sue someone who was at fault for the accident for noneconomic losses (such as pain and suffering)." (Ballot Pamp., *supra*, What Your Vote Means, at p. 6.) They "could recover only medical and out-of-pocket expenses but would be prohibited from recovering 'pain and suffering' awards from insured drivers." (Ballot Pamp., *supra*, Arguments-Pro, at p. 7.) The legislative analyst also explained that "[t]his measure would prohibit the recovery of *noneconomic* losses in certain car accidents. Specifically, an uninsured driver . . . could not sue someone at fault for the accident for noneconomic losses." (Ballot Pamp., *supra*, Analysis by the Legislative Analyst, at p. 49.)

Finally, the argument in favor of Proposition 213 stated it *"will prevent . . . uninsured motorists from collecting these huge monetary awards"* for noneconomic losses. (Ballot Pamp., *supra*, Argument in Favor of Prop. 213, at p. 50.) *"The system needs to be fixed. Illegal behavior shouldn't be rewarded. People who break the law must be held accountable for their actions."* (*Ibid.*) "PROPOSITION 213 SAYS NO TO UNINSURED DRIVERS BY SAYING NO TO HUGE MONETARY AWARDS FOR 'PAIN AND SUFFERING!' " (*Ibid.*) Conspicuously, it omitted any reference to wrongful death actions as did the argument against the measure, which spoke only of the effect on "an innocent person who cannot [afford insurance]." (Ballot Pamp., *supra*, Argument Against Proposition 213, at p. 51.)

---

[6]Throughout, the ballot pamphlet materials also note Proposition 213's prohibition against suits by convicted felons for crime-related injury and recovery of noneconomic damages by convicted drunk drivers. Since uninsured motorists are at issue here, we cite only to these references in the initiative, except to the extent that parallel language supports our construction of section 3333.4, subdivision (a)(2) and (3). We express no opinion as to the applicability of the other provisions of Proposition 213 in wrongful death actions.

These arguments evince a single-minded concern with the unlawful conduct of uninsured motorists who, at the expense of law-abiding citizens, could recover for noneconomic losses while flouting the financial responsibility laws. (See Ballot Pamp., *supra*, Rebuttal to Argument Against Prop. 213, at p. 51.) The language of section 3333.4 mirrors this intent. We must therefore construe it in accordance with both the letter and spirit of the enactment. Since the initiative also contains no mention of heirs or those who might sue for loss of the care, comfort, and society of their uninsured decedents, we are not at liberty to apply the prohibition against such plaintiffs. (Cf. *Hodges* v. *Superior Court, supra*, 21 Cal.4th at p. 116 ["no suggestion" Proposition 213 was intended to apply in case alleging vehicle design defect].)

Defendant contends the prefatory reference to "a person" in subdivision (a) is definitive in construing section 3333.4. Our interpretation, however, better follows the grammatical structure and logic of the statutory language taken as a whole in light of the electorate's intent. His construction reads "a person" in isolation without taking into account the "if" proviso in subdivision (a), which provides that application is limited by subdivision (a)(2) and (3), restricting recovery only by the "injured person" who is uninsured. (Cf. *People* v. *Ledesma* (1997) 16 Cal.4th 90, 97 [65 Cal.Rptr.2d 610, 939 P.2d 1310].) "The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible." (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) Moreover, it would render "[t]he injured person" surplusage. (See also § 3333.4, subd. (a)(1) [prohibiting recovery of noneconomic damages if "[t]he injured person" was convicted of driving under the influence at the time of the accident].) Under defendant's interpretation the statute would effectively read as follows: "[A] person shall not recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages if . . . [¶] . . . [¶] . . . the owner of a vehicle involved in the accident . . . was not insured as required by the financial responsibility laws of this state. . . . [or] [¶] . . . the operator of a vehicle involved in the accident . . . can not establish his or her financial responsibility as required by the financial responsibility laws of this state."

Principles of statutory construction also counsel that we should avoid an interpretation that leads to anomalous or absurd consequences. (*Calatayud* v. *State of California* (1998) 18 Cal.4th 1057, 1072 [77 Cal.Rptr.2d 202, 959 P.2d 360].) Defendant's reading of the statute could lead to the broad interpretation that no one could recover noneconomic damages when an

automobile owner or operator is uninsured. It would thus follow that if a non-negligent uninsured driver were in an accident with a negligent insured driver and the uninsured driver's passenger were injured, the passenger—as "a person"—would be limited to recovery of economic damages because "the operator of the vehicle involved in the accident [could] not establish his or her financial responsibility as required" by law. In light of the statutory language, the uncodified portions of the initiative, and the ballot arguments in favor of Proposition 213, we cannot find this result consistent with the electorate's ostensibly narrow purpose to penalize scofflaws. (See also *Yoshioka* v. *Superior Court, supra*, 58 Cal.App.4th at p. 983 [purposes of Prop. 213 include "increasing the costs of . . . disobeying California's Financial Responsibility Law"]; cf. *Hodges* v. *Superior Court, supra*, 21 Cal.4th at p. 115 ["primary aim of Proposition 213, as relevant here, was to limit automobile insurance claims by uninsured motorists" (italics omitted)]; *id.* at pp. 115-118.) At oral argument defendant's counsel disavowed such a result, offering a narrower construction under which the "injured person" must also be an uninsured owner or operator. Wrongful death plaintiffs would still come within the statutory restriction because their injuries are "peripheral." However, he did not satisfactorily explain how the provisions of section 3333.4, read as a whole, support this rather contorted construction.

Defendant contends nevertheless that his construction better effectuates the intent to "restor[e] balance to our justice system and . . . reduc[e] costs of mandatory automobile insurance." (*Yoshioka* v. *Superior Court, supra*, 58 Cal.App.4th at p. 983.) By eliminating "big money awards that . . . *uninsured motorists and their attorneys go after when these lawbreakers are in an accident with an insured driver*" (Ballot Pamp., *supra*, Rebuttal to Argument Against Prop. 213, at p. 51), the electorate apparently anticipated the change in the law would "decreas[e] the number of lawsuits, reduce[e] annual court-related costs to state and local governments, increas[e] the costs of drunk driving and disobeying California's Financial Responsibility Law, . . . and avoid[] unreasonable damages being awarded to the uninsured." (*Yoshioka* v. *Superior Court, supra*, 58 Cal.App.4th at p. 983.) Additionally, because negligent insured drivers would be shielded from noneconomic damage awards, in theory their insurance rates should eventually reflect this savings by insurers. (See Ballot Pamp., *supra*, Argument in Favor of Prop. 213, at p. 50.) According to defendant, denying recovery of noneconomic losses to wrongful death plaintiffs promotes these goals.

Although defendant's analysis is plausible, the text and structure of the initiative lead us to a different conclusion. As we have previously explained in *Hodges* v. *Superior Court, supra*, 21 Cal.4th 109, Proposition 213 was in

substantial part aimed at punishing persons who theretofore could recover fully from insured drivers without themselves obeying the financial responsibility laws. (*Hodges*, *supra*, at pp. 115-116.) Logically, wrongful death plaintiffs who are neither the uninsured owner nor operator of the vehicle involved in the accident were not targeted since they do not contribute to this perceived unfairness, nor are they in a position to rectify it. They have not failed to take personal responsibility, and they can do nothing to reduce the "skyrocket[ing]" insurance costs assertedly attributable to uninsured motorists that Proposition 213 is intended to ameliorate. (Ballot Pamp., *supra*, Prop. 213, § 2, subd. (a), at p. 102.) They are not part of the problem. Thus, we cannot deem them part of the solution.

Defendant suggests section 3333.4 should be interpreted broadly to give uninsured motorists the additional incentive to obtain insurance, so that in the event of their demise in an automobile accident, their heirs will be able to recover nonpecuniary damages. (But see *ante*, fn. 3.) This argument is flawed in several respects. First, as reflected in the text of the initiative and the ballot arguments, prompting compliance with the financial responsibility laws appears at best an incidental intent of Proposition 213. The principal goals were to punish scofflaws and reform an unfair system that allowed lawbreakers to recover substantial noneconomic damages. (See *Yoshioka* v. *Superior Court*, *supra*, 58 Cal.App.4th at p. 983.) Second, the law already includes significant direct incentive to comply with these obligations. (See, e.g., Veh. Code, § 16029 [failure to provide proof of financial responsibility is infraction; vehicle may be impounded].) In comparison to avoiding a substantial fine (up to $2,000 for a second offense) or the loss of one's vehicle, the tertiary benefit of ensuring full recovery for one's heirs is significantly less compelling.

Additionally, defendant's argument fails to appreciate the essential nature of an incentive. Whether it takes the form of a carrot or a stick, an incentive is most effective to the extent it directly rewards or punishes the person it is intended to motivate. Most people undoubtedly contemplate auto insurance from the perspective of a potential defendant—to protect against personal liability in case of an accident—not as a potential plaintiff—to provide for recovery of noneconomic damages. While section 3333.4 imposes an adverse consequence for the person whose behavior the law seeks to influence, that consequence is itself substantially attenuated, particularly since an uninsured motorist may still recover all economic damages sustained. Moreover, the effectiveness of the incentive requires that the person survive any accident. If the only adverse effect is to limit recovery for one's heirs (who also can still recover economic damages in any event), the provision's efficacy as an incentive decreases to virtually nil. To the extent the voters

intended any inducement to owners and operators to purchase insurance, in all likelihood it was as a matter of enlightened self-interest rather than as a form of estate planning. Life insurance, which does not depend on the vagaries of wrongful death litigation, affords a much more reliable means of providing for one's survivors.

Furthermore, even if a broader reading might marginally increase the incentive to obtain insurance, we cannot read more into the statute than its words, context, and history permit. Other statutes imposing limits on damage recovery expressly apply to wrongful death actions. (See §§ 1431.2, 3333.2.) ■ "Generally, the drafters who frame an initiative statute and the voters who enact it may be deemed to be aware of" existing law. (*In re Harris* (1989) 49 Cal.3d 131, 136 [260 Cal.Rptr. 288, 775 P.2d 1057].) Had the drafters of Proposition 213 intended similar coverage, they could have included appropriate language. (See, e.g., *Californians for Political Reform Foundation* v. *Fair Political Practices Com.* (1998) 61 Cal.App.4th 472, 485 [71 Cal.Rptr.2d 606].)

■ In the alternative, defendant argues he should be able to invoke section 3333.4 because "[a] wrongful death plaintiff is subject to any defenses which the defendant could assert against the decedent . . . ." (*Saenz* v. *Whitewater Voyages, Inc.* (1990) 226 Cal.App.3d 758, 763 [276 Cal.Rptr. 672].) Contrary to his assertion, this is not an "absolute" rule. ■ Unlike some jurisdictions wherein wrongful death actions are derivative, Code of Civil Procedure section 377.60 "creates a *new cause of action* in favor of the heirs as beneficiaries, based upon their own independent pecuniary injury suffered by loss of a relative, and distinct from any the deceased might have maintained had he survived. [Citations.]" (6 Witkin, Summary of Cal. Law, *supra*, § 1197, pp. 632-633; see also *Blackwell* v. *American Film Co.* (1922) 189 Cal. 689, 693-694 [209 P. 999]; *Brown* v. *Rahman* (1991) 231 Cal.App.3d 1458, 1460-1461, fn. 3 [282 Cal.Rptr. 815].) Although for some purposes the actions may be "inextricably linked" (*Atkins* v. *Strayhorn* (1990) 223 Cal.App.3d 1380, 1395 [273 Cal.Rptr. 231]), that is not categorical; each case must be examined in its context.

In certain instances, a wrongful death plaintiff is never subject to the particular defense even if it could have been conclusively asserted against the decedent. Most notably, a wrongful death action has its own statute of limitations, which runs from the date of death rather than any antecedent injury. (See, e.g., *Larcher* v. *Wanless* (1976) 18 Cal.3d 646, 656 [135 Cal.Rptr. 75, 557 P.2d 507]; see also *Cross* v. *Pacific Gas & Elec. Co.* (1964) 60 Cal.2d 690, 692-693 [36 Cal.Rptr. 321, 388 P.2d 353] [statute of limitations may vary among wrongful death plaintiffs].) Nor can a decedent

release a claim on behalf of his or her heirs in settlement with the defendant. (See, e.g., *Earley* v. *Pacific Electric Ry. Co.* (1917) 176 Cal. 79, 81-82 [167 P. 513]; see also *Scroggs* v. *Coast Community College Dist.* (1987) 193 Cal.App.3d 1399, 1404 [239 Cal.Rptr. 916].) Moreover, a defendant cannot assert res judicata against the heirs based on a decedent's prior successful personal injury action (*Blackwell* v. *American Film Co., supra,* 189 Cal. at pp. 693-694), although, as discussed below, principles of collateral estoppel may apply.

The court in *Rhodes* v. *California Hospital Medical Center* (1978) 76 Cal.App.3d 606 [143 Cal.Rptr. 59], found heirs were not bound by an arbitration agreement between a health care provider and the decedent. In reaching this conclusion, it distinguished cases "holding that heirs could not maintain a wrongful death action where their decedent had no cause of action against the defendant because of matters going to the merits of any action by the decedent." (*Id.* at p. 608.) "This arbitration proceeding does not, at this stage, involve any question as to the existence of a cause of action in [the decedent] or of any defense to such action on its merits. We are here concerned solely with the forum in which a new cause of action in the heirs may be brought." (*Id.* at p. 609.) Subsequent cases have disagreed in light of Code of Civil Procedure section 1295, enacted as part of the Medical Injury Compensation Reform Act, which provides that arbitration clauses in medical service contracts are not contracts of adhesion if formulated according to statutory specifications. (See *Pietrelli* v. *Peacock* (1993) 13 Cal.App.4th 943, 947, fn. 1 [16 Cal.Rptr.2d 688].) This latter determination is consistent with our discussion below that the application of some limitations or bars to wrongful death actions will turn on statutory interpretation. (See *post,* at pp. 286-287.)

On the other hand, some defenses can be asserted equally against the decedent or the heirs, principally comparative negligence, release in the case of primary assumption of the risk, privilege, and collateral estoppel. In general, courts allow these defenses based on the underlying principles of law, which by their nature extend to the wrongful death plaintiff in addition to, not in the place of, the decedent. Thus, if the decedent had been comparatively negligent, a wrongful death judgment will be reduced proportionately. (See, e.g., *Atkins* v. *Strayhorn, supra,* 223 Cal.App.3d at p. 1395; see also *Buckley* v. *Chadwick* (1955) 45 Cal.2d 183, 200-201 [265 P.2d 884] [applying principles of contributory negligence to wrongful death actions]; *Smith* v. *Americania Motor Lodge* (1974) 39 Cal.App.3d 1, 8 [113 Cal.Rptr. 771, 88 A.L.R.3d 1188] [invoking parent's negligence in action for wrongful death of child].) During the era of contributory negligence, the rationale may have been that the decedent's negligence is imputed to the heirs. (See

*Hasson* v. *Ford Motor Co.* (1977) 19 Cal.3d 530, 552 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158], overruled on other grounds in *Soule* v. *General Motors Corp.* (1994) 8 Cal.4th 548, 580 [34 Cal.Rptr.2d 607, 882 P.2d 298]; see also *Willis* v. *Gordon* (1978) 20 Cal.3d 629, 638 [143 Cal.Rptr. 723, 574 P.2d 794] (conc. opn. of Mosk, J.).) More modernly, principles of comparative fault and equitable indemnification support an apportionment of liability among those responsible for the loss, including the decedent, whether it be for personal injury or wrongful death. (See *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578, 598 [146 Cal.Rptr. 182, 578 P.2d 899]; *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 809-813 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].)

A release executed by the decedent in circumstances involving primary assumption of the risk may also be asserted as a defense. (See, e.g., *Saenz* v. *Whitewater Voyages, Inc., supra,* 226 Cal.App.3d at pp. 763-764 [white water rafting]; *Madison* v. *Superior Court* (1988) 203 Cal.App.3d 589, 597-598 [250 Cal.Rptr. 299] [scuba diving]; *Coates* v. *Newhall Land & Farming, Inc.* (1987) 191 Cal.App.3d 1, 8 [236 Cal.Rptr. 181] [dirt bike riding].) In that situation, the decedent agrees in advance of the activity to relieve the defendant of any duty of care. (*Madison* v. *Superior Court, supra,* 203 Cal.App.3d at p. 597; see *Knight* v. *Jewett* (1992) 3 Cal.4th 296, 314-315 [11 Cal.Rptr.2d 2, 834 P.2d 696].) The defendant can owe no greater duty to the heirs than to the decedent; thus the premise of any wrongful death action would fail at the outset. Similarly, when the defendant has been justified in the use of deadly force against the decedent, the privileged nature of the conduct is a defense to all civil liability regardless of the plaintiff's status. (See, e.g., *Gilmore* v. *Superior Court* (1991) 230 Cal.App.3d 416, 420-421 [281 Cal.Rptr. 343].)

If the decedent had unsuccessfully prosecuted a personal injury action, the defendant may invoke collateral estoppel in a subsequent wrongful death suit. (See, e.g., *Evans* v. *Celotex Corp.* (1987) 194 Cal.App.3d 741, 744-747 [238 Cal.Rptr. 259]; see also *State Farm Fire & Casualty Co.* v. *Dominguez* (1982) 131 Cal.App.3d 1, 4-6 [182 Cal.Rptr. 109].) This defense arises from the identity of interests between the decedent and the heirs, i.e., the "[p]laintiffs' right to recovery, like the deceased's, depends on the liability of [the] defendant . . . ." (*Evans* v. *Celotex Corp., supra,* 194 Cal.App.3d at p. 744; see generally, *Zaragosa* v. *Craven* (1949) 33 Cal.2d 315, 317-318 [202 P.2d 73, 6 A.L.R.2d 461].) This principle is not unique to wrongful death actions; all parties in privity with an antecedent litigant are subject to the application

of collateral estoppel.[7] (Cf. *Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d at pp. 876-877.)

In wrongful death actions involving a statutory defense that could have been asserted against the decedent, the results are less definitive. In the main, courts have considered the matter one of statutory construction, applying or disallowing the defense in accordance with the express terms of the provision at issue while respecting the independent status of a wrongful death action. Thus, the exclusivity of workers' compensation prevails as to heirs in light of Labor Code section 3600, which provides that liability under the Workers' Compensation Act (Lab. Code, § 3200 et seq.) is "in lieu of any other liability whatsoever to any person . . . for the death of any employee . . . ." (See also *Salin* v. *Pacific Gas & Electric Co.* (1982) 136 Cal.App.3d 185, 190 [185 Cal.Rptr. 899]; but see *Snyder* v. *Michael's Stores, Inc.* (1997) 16 Cal.4th 991, 999, fn. 2 [68 Cal.Rptr.2d 476, 945 P.2d 781].)

In *Garcia* v. *State of California* (1967) 247 Cal.App.2d 814 [56 Cal.Rptr. 80], however, the court declined to bar a wrongful death action by the heirs of a prisoner pursuant to Government Code section 844.6. At the time, Government Code section 844.6, subdivision (a), provided in relevant part: "[A] public entity is not liable for: [¶] (1) An injury proximately caused by any prisoner. [¶] (2) An injury to any prisoner." The statute nevertheless contained an exception: "Nothing in this section prevents a person, other than a prisoner, from recovering from the public entity for an injury resulting from the dangerous condition of public property . . . ." (Former Gov. Code, § 844.6, subd. (c), added by Stats. 1963, ch. 1681, § 1, p. 3277.) The plaintiffs' decedent had died of injuries caused by the collapse of a weight suspension rack furnished to prisoners for training and rehabilitation activities. Because the wrongful death action was "not derivative or a continuation or revival of a cause of action existing in a decedent before his death," but rather "original and distinct" with respect to the heirs, they were not bound by the limitation on a prisoner's right to sue a public entity for injury. (*Garcia* v. *State of California, supra,* 247 Cal.App.2d at p. 816.) Therefore, they could invoke the exception in subdivision (c), which "[did] not distinguish between the survivors of a deceased prisoner and other persons." (*Id.* at p. 817.)

---

[7]A question might arise whether a wrongful death plaintiff would be bound pursuant to principles of collateral estoppel by a finding under section 3333.4 that the decedent could not recover noneconomic damages. Under the facts of this case, we need not definitively resolve this issue. However, given our interpretation of section 3333.4 as it applies in these circumstances, there may be insufficient identity of issues to preclude subsequent litigation by the heirs. (See *Clemmer* v. *Hartford Ins. Co.* (1978) 22 Cal.3d 865, 876-877 [151 Cal.Rptr. 285, 587 P.2d 1098]; see generally, *Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 813 [122 P.2d 892].)

By contrast, in *Lowman* v. *County of Los Angeles* (1982) 127 Cal.App.3d 613 [179 Cal.Rptr. 709], the deceased prisoner did not die as the result of a dangerous condition of public property but from alleged malpractice while he was being held for a medical examination in the jail ward. (*Id.* at p. 614.) Thus, the exception, which in any event had been amended in light of *Garcia* (see Stats. 1970, ch. 1099, § 5, p. 1957), did not apply. Under the express terms of the statute, the heirs, as well as the prisoner himself, were barred from recovery. (*Lowman* v. *County of Los Angeles, supra,* 127 Cal.App.3d at pp. 615-616.)

In *Whitehill* v. *Strickland* (1967) 256 Cal.App.2d 837 [64 Cal.Rptr. 584] (*Whitehill*), the court considered whether the defendant could rely on former Vehicle Code section 17158, California's guest statute, to disclaim liability in a wrongful death action. The statute provided: " 'No person riding in or occupying a vehicle owned by him and driven by another person with his permission and no person who as a guest accepts a ride in any vehicle upon a highway without giving compensation for such ride, nor any other person, has any right of action for civil damages against the driver of the vehicle or against any other person legally liable for the conduct of the driver on account of personal injury to or death of the owner or guest during the ride . . . .' " (*Whitehill, supra,* 256 Cal.App.2d at p. 839.) The reviewing court initially recognized that "Vehicle Code section 17158 is in derogation of the common law and must be strictly construed. [Citations.]" (*Whitehill, supra,* at p. 840.) Accordingly, it concluded the statute did not bar liability because the decedent's husband (the wrongful death plaintiff), not the decedent herself, owned the vehicle (*ibid.*) and because the defendant, who was not the owner but a permissive driver, "was in no position to extend an invitation to anyone to ride with him." (*Ibid.*) Since the decedent did not come within the express terms of the statute, it did not afford a defense.

 Thus, contrary to defendant's assertion, no "absolute" rule allows a wrongful death defendant to assert any defense that would have been available against the decedent. In the case of a statutory defense, the court must consider the language and intent of the enactment as well as the original and distinct nature of a wrongful death action. As previously discussed, the more reasonable interpretation of section 3333.4, in light of the electorate's objective, precludes its application under the circumstances of this case. Moreover, neither the statute nor any other relevant source explicitly or implicitly refers to wrongful death claims when the plaintiff is not the uninsured owner or operator of the vehicle involved in the accident. Accordingly, we find no basis for defendant to invoke section 3333.4 as a defense even if he could have asserted it against the decedent.

This interpretation avoids anomalous consequences that would appear inconsistent with the intent of Proposition 213. Section 3333.3 precludes

recovery of both economic and noneconomic damages by fleeing felons; and section 3333.4, subdivision (a)(1), precludes recovery of noneconomic damages by drunk drivers. The limitation applies, however, only if the plaintiff is convicted, an unlikely event if the felon or drunk driver dies in the incident. (See *ante*, fn. 2.) Thus, the heirs of these individuals would not be subject to the defense of section 3333.3 or 3333.4. Nevertheless, under defendant's vicarious defense theory, section 3333.4, subdivision (a)(2) and (3), would virtually always bar heirs of uninsured owners or operators,[8] arguably the least culpable of those wrongdoers targeted by Proposition 213. We decline to ascribe this essentially irrational result to the electorate.

DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Mosk, J., Kennard, J., Baxter, J., and Werdegar, J., concurred.

**CHIN, J.,** Dissenting.—The issue in this case is whether Civil Code section 3333.4[1] precludes the wrongful death plaintiffs from recovering nonpecuniary damages when the decedent was an uninsured motorist at the time of the accident. Under section 3333.4, subdivision (a)(2) and (3), a "person" cannot recover nonpecuniary damages if the "injured person" was either an uninsured owner or uninsured operator of the vehicle involved in the accident.

While the majority correctly notes that the "controlling language for our purposes is the reference to the 'injured person' " (maj. opn., *ante*, at p. 277), I am not convinced by its analysis that the "injured person" is by definition any plaintiff seeking recovery. Rather, I am persuaded by the rules of statutory construction that "injured person" means what it says—the person injured in the underlying accident. Therefore, I respectfully dissent. I would hold instead that section 3333.4's limitations apply to the heirs of an uninsured motorist killed in an accident.

The majority finds the wrongful death plaintiffs here are not barred from recovery under the section because they, as "injured persons," were neither uninsured owners nor uninsured operators. (Maj. opn., *ante*, at p. 277.) In so finding, the majority *assumes* what it should be critically asking—what does "injured person" mean under section 3333.4? I cannot accept the majority's

---

[8]Under section 3333.4, subdivision (c), the heirs of an uninsured driver would not be limited to economic damages if the driver of the other vehicle were convicted of driving under the influence.

[1]All further statutory references are to the Civil Code.

unsupported conclusion that "under the law the terms ['injured person' and 'plaintiff'] are equivalent, or at least without legal distinction in these circumstances." (Maj. opn., *ante*, at p. 279.) This tautological argument should not replace reasoned analysis, especially given the significance of the term "injured person" in this context.

Indeed, the majority's interpretation of "injured person" runs counter to general rules of statutory construction. An interpretation that renders any term surplusage should be avoided. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224].) Under section 3333.4, subdivision (a), the term "person," which controls paragraphs (1) through (3), clearly refers to a plaintiff seeking recovery. No other conclusion is possible. Those paragraphs, however, contain the apparently narrower term, "injured person." By defining "injured person" also to mean the plaintiff, the majority's interpretation effectively renders the term "injured" preceding "person" surplusage.

Instead, "[i]f reasonably possible, the phrase must be given a meaning that will make of it something more than only an unnecessary and tautological addition to the act." (*Golden Gate Scenic Steamship Lines, Inc.* v. *Public Utilities Com.* (1962) 57 Cal.2d 373, 377 [19 Cal.Rptr. 657, 369 P.2d 257].) Here, not only is it reasonably possible that "injured person" means the person directly injured in the underlying accident, but the statute also supports this interpretation. Subdivision (c) of section 3333.4 describes the "injured person" as a person "injured by a motorist who at the time of the accident was operating his or her vehicle . . . ." This language makes clear that the "injured person" is someone directly injured in the accident, not merely anyone who is a plaintiff in an action relating to an accident. ˙

I do not suggest that plaintiffs have not been "injured" by their daughter's death. (See *Krouse* v. *Graham* (1977) 19 Cal.3d 59, 68 [137 Cal.Rptr. 863, 562 P.2d 1022].) However, the majority has not presented any compelling argument that the term "injured person" under the section should be defined generally as any plaintiff seeking recovery (which definition would render the term "injured" surplusage), when the statutory language itself supports a narrower definition.

Section 3333.3, which also was enacted as part of Proposition 213, also supports my interpretation. The majority asserts that section 3333.3's language is "[p]arallel" to that of section 3333.4. (Maj. opn., *ante*, at p. 278.) The language is hardly parallel; rather, it is quite different. Section 3333.4 precludes nonpecuniary damages when the "injured person" is an uninsured motorist. By contrast, section 3333.3 prohibits any damages in a negligence

action if the "plaintiff's injuries" were caused by the "plaintiff's" commission of a felony. We may reasonably conclude that if the electorate intended "injured person" to mean "plaintiff" in section 3333.4, it would have stated so specifically, as it did in section 3333.3. "[W]hen the drafters of a statute have employed a term in one place and omitted it in another, it should not be inferred where it has been excluded." (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1010 [239 Cal.Rptr. 656, 741 P.2d 154].) The electorate's use of the term "injured person" in section 3333.4 rather than section 3333.3's broader reference to "plaintiff" shows clearly that the electorate intended a different meaning.

The majority's concern that this interpretation would preclude anyone, including a passenger, from recovering nonpecuniary damages when a vehicle's owner or operator is uninsured is unfounded. (Maj. opn., *ante*, at pp. 280-281.) A passenger who is injured in the accident is an "injured person" who, as neither the uninsured owner nor uninsured operator of the vehicle, can recover nonpecuniary damages.

Unlike the majority, I do not readily dismiss the argument that a wrongful death plaintiff generally "stands in the shoes" of the decedent and is subject to any defenses that the defendant could have asserted against the decedent. (*Saenz* v. *Whitewater Voyages, Inc.* (1990) 226 Cal.App.3d 758, 763-764 [276 Cal.Rptr. 672]; *Argonaut Ins. Co.* v. *Superior Court* (1985) 164 Cal.App.3d 320, 324 [210 Cal.Rptr. 417].) Under this general rule, "If one injured by a tortious act may not himself recover from the tortfeasor, 'then it follows that under established law governing wrongful death actions, his survivors may not recover in . . . such an action.' " (*Salin* v. *Pacific Gas & Electric Co.* (1982) 136 Cal.App.3d 185, 192 [185 Cal.Rptr. 899], quoting *Cole* v. *Rush* (1955) 45 Cal.2d 345, 351 [289 P.2d 450, 54 A.L.R.2d 1137], overruled on other grounds in *Vesely* v. *Sager* (1971) 5 Cal.3d 153, 167 [95 Cal.Rptr. 623, 486 P.2d 151].)

Although this rule concededly is not absolute, nothing in section 3333.4's language suggests the intent to carve out an exception under the circumstances of this case. Section 3333.4 seeks to deter persons from disobeying the financial responsibility laws. In this regard, the section is closely analogous to the defense of comparative negligence, which *can* be asserted against the decedent's heirs. (See *Buckley* v. *Chadwick* (1955) 45 Cal.2d 183, 200-201 [265 P.2d 884]; *Atkins* v. *Strayhorn* (1990) 223 Cal.App.3d 1380, 1395 [273 Cal.Rptr. 231].) If a wrongful death plaintiff's recovery can be reduced by the decedent's comparative negligence, we may reasonably conclude the electorate intended a wrongful death plaintiff's recovery similarly to be reduced by the decedent's failure to obtain legally required insurance.

Moreover, the secondary materials which the majority cites are not dispositive. (Maj. opn., *ante*, at pp. 277-279.) While Proposition 213's uncodified "Findings and Declaration of Purpose" refer to targeting "[u]ninsured motorists, drunk drivers, and criminal felons," without specific mention of wrongful death plaintiffs (Ballot Pamp., text of Prop. 213 as presented to voters, Gen. Elec. (Nov. 5, 1996) § 2, at p. 102), the same findings also do not specifically create any exception to the general rule that a wrongful death plaintiff "stands in the shoes" of the decedent.

My interpretation furthers the intent and purpose of Proposition 213. ". . . Proposition 213 was designed primarily for the benefit of 'law-abiding citizens'—i.e., drivers who obey the financial responsibility laws . . . ." (*Hodges* v. *Superior Court* (1999) 21 Cal.4th 109, 116 [86 Cal.Rptr.2d 884, 980 P.2d 433]), and was also intended "to reduce skyrocketing insurance premiums by encouraging motorists to buy liability insurance." (*Yoshioka* v. *Superior Court* (1997) 58 Cal.App.4th 972, 983 [68 Cal.Rptr.2d 553].) Barring the heirs of uninsured motorists from recovering nonpecuniary damages provides an additional incentive for those motorists to purchase insurance, to the benefit of all law-abiding citizens. The majority summarily attempts to discount the effectiveness of this incentive without providing any substantive basis for doing so. (Maj. opn., *ante*, at pp. 282-283.) I remain unpersuaded. If denying nonpecuniary damages to uninsured motorists "encourag[es] motorists to buy liability insurance" (*Yoshioka* v. *Superior Court, supra*, 58 Cal.App.4th at p. 983), the incentive is certainly increased when the uninsured motorist's heirs are also denied such damages. I believe the electorate sought this incentive when it prohibited nonpecuniary damages whenever the "injured person" was an uninsured motorist.

Accordingly, I dissent.