I join in holding that the petition should be denied. The statute of limitations in this case was not triggered until the Department of Justice lab completed its review of the case in accordance with its own protocols. However, the People have not asserted that any later statutory date should be established, and the record before this court requires no further conclusions. The additional guidance offered by the majority reaches conclusions concerning legislative intent and statutory interpretation with which I cannot concur, because I believe the mechanism it establishes creates serious obstacles to meaningful implementation of the statute of limitations. I respectfully dissent from that portion of the opinion.
 The Statute Does Not Require Admissible Evidence to Trigger the Statutory Period
The majority interprets the term "conclusively established" on its face to require "more than raw data or tentative or preliminary conclusions," a conclusion with which I agree. (Maj. opn., ante, p. 572.) However, I cannot share the further conclusion that compliance with established scientific protocols is insufficient to meet the statutory requirements. That additional interpretation is drawn from rules for the admissibility of evidence at trial, or at pretrial evidentiary hearings, not from procedures normally followed during the period of investigation prior to the filing of charges in a criminal proceeding.
As the majority acknowledges, the Legislature was aware of "`the traditional policy reasons underlying the statute of limitations,'" but was also concerned that the backlog of untested biological evidence existing in 2000 would result in prosecutions being barred unless an extension of the existing statutory periods was achieved. (Maj. opn.,ante, at p. 574.) As initially introduced, Assembly Bill No. 1742 (1999-2000 Reg. Sess.) set a one-year statutory period commencing on the date on which DNA testing "that links a named suspect to the offense is completed by the laboratory testing the evidence." (Assem. Amend, to Assem. Bill No. 1742 (1999-2000 Reg. Sess.) Mar. 9, 2000, § 1, p. 7, italics omitted.) The report from the Senate Committee on Public Safety which accompanied this version of the bill described it as providing a one-year window to be opened on the date on which DNA testing was completed that linked a suspect to the offense. It concluded *Page 582 
"`AB 1742 will ensure that we solve the most heinous of crimes while maintaining the balance between vigorous enforcement and the traditional policy reasons underlying the statute of limitations.'" (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1742 (1999-2000 Reg. Sess.) as amended Mar. 9, 2000, p. 5.)
In June 2000, the Senate Committee on Public Safety issued a detailed report, discussing at length the purpose of statutes of limitation. In part, it reported: "The United States Supreme Court has stated that statutes of limitations are the primary guarantee against bringing overly stale criminal charges. United States v. Ewell (1966) 383 U.S. 116 [15 L.Ed.2d 627, 122, 86 S.Ct. 773]. There is a measure of predictability provided by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced. Such laws reflect legislative assessments of relative interests of the State and the defendant in administering and receiving justice." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1742, supra, at pp. 6-7.)
The report did suggest that some commentators believed there should be no statute of limitations on crimes covered by the statute, but also noted that commentators had raised concerns about the open-ended nature of potential prosecutions and expressly discussed the fact that the legislation could have the unintended consequence of removing the limitations period as an incentive for swift investigation of crime. The report concluded this discussion by stating "Under California law, the criminal justice system, victims and the community as a whole have an interest in not only seeing these cases eventually prosecuted, but also in seeing them prosecuted in a timely manner. [Citing Pen. Code, § 1050, subd. (a) [duty of courts and all counsel to expedite proceedings to the greatest degree consistent with the ends of justice].]" (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1742, supra, at pp. 9-10.)
In July 2000, the language of the bill was amended to include the "conclusively established" language at issue here. In the Senate Rules Committee Analysis for the amended bill, no reason was stated for the change in language; in fact, the report was silent as to the fact that the change was made. The digest, as it had for the earlier version of the statute, referred to the linkage requirement, not to the new language. In the body of the report, the justification for the statute remained largely unchanged. The argument in support remained, as it had throughout the process, linked to the backlog of samples and the need to modernize the state's crime laboratories without barring the prosecution of solved cases during the time needed to rectify the situation. In the face of this consistently articulated rationale, and the resounding silence concerning the existence and meaning of the change in *Page 583 
language, I cannot find the legislative intent necessary to allow prosecuting agencies to move normal trial preparation from the period after a defendant is charged to the period before the statute commences. To base such a change on unexplained silence at the expense of the policy underlying the statute of limitations detailed in the legislative reports seems inconsistent with the stated intent to balance the competing interests inherent in statutes of limitations.
The construction of the language adopted by the majority in effect requires that trial preparation with respect to the DNA evidence be completed prior to the trigger date for the statute of limitations. And while the legislation, as a protective matter, requires prompt DNA testing, it imposes no such requirement on trial preparation. If the intent was that such activity by the prosecuting authority would occur within the period between the triggering of the statute and the trial, that silence is logical: no explicit requirement would be necessary. If the prosecutor was unable to marshal and be prepared to introduce at trial the necessary admissible evidence, the prosecution would be unable to go forward. An interpretation moving all of this work, performed out of the sight of any reviewing body and at the pace and timing chosen solely by the prosecuting agency, not only extends the statutory period in an unlimited manner, but also leaves the defendant without the ability to know when the statute of limitations has commenced to run. Moreover, this interpretation does not lead to consistency among prosecuting agencies and jurisdictions, leaving instead to the chance determination of when preparation will be completed the important element of elimination of undue delay in giving notice to defendants of charges and an adequate opportunity to prepare a defense.
The additional requirements that the majority opinion would impose appear to be based on a literal reading of the amended statutory language. Such a literal reading, if inconsistent with the overall intent of the Legislature, is not ours to impose. "` "[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend." [Citations.] Thus, "[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act." [Citation.] Finally, we do not construe statutes in isolation, but rather read every statute "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." [Citation.]' [Citation.] We must also consider `the object to be achieved and the evil to be prevented by the legislation. [Citations.]' [Citation.]" (Horwich v. Superior Court (1999) 21 Cal.4th 272, 276 [87 Cal.Rptr.2d 222, 980 P.2d 927].) The literal reading imposed by the majority here results, in practical terms, in a scheme which does not prevent the problem which the legislation addressed: to balance the need to allow testing of potential evidence and prosecutions based on that *Page 584 
evidence, with preservation of the rights and duties traditionally preserved by a statute of limitations. And, even if the statute were amenable to the alternative view, "`"if a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed. . . ."'" (People v. Gonzalez (2008)43 Cal.4th 1118, 1126 [77 Cal.Rptr.3d 569, 184 P.3d 702].) In my view, a result consistent with the overall conduct of criminal prosecutions, dividing tasks between the period before and after the statute is triggered, is the more reasonable result, the one most consistent with the reported legislative analysis, and the one which best preserves the critical balance of rights implicated by these cases. *Page 585