[No. A087333. First Dist., Div. Five. Oct. 16, 2000.]

WENDI L. HARRIS, Plaintiff and Appellant, v.
LOIS M. LAMMERS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.A.

**COUNSEL**

Ferman W. Sims and Dennis H. Black for Plaintiff and Appellant.

Law Office of W. G. Watson, Jr., Stephen G. Watson and Philip G. Watson for Defendant and Appellant.

## OPINION

**JONES, P. J.**—Wendi L. Harris filed a complaint against Lois M. Lammers seeking damages for injuries she sustained in a car accident. The matter was tried before a judge who ruled Lammers was negligent and who awarded Harris $21,244.62 in damages. However, the court reduced the award to $6,884.50 pursuant to the provisions of Code of Civil Procedure section 998. Harris now appeals claiming the judgment must be reversed because the trial court committed several errors during trial. Lammers cross-appeals claiming the judgment must be modified to eliminate the portion of the judgment that awarded Harris noneconomic damages. We will reject the arguments advanced on appeal and affirm that aspect of the judgment. However, we agree with Lammers's contention that an award of noneconomic damages was unavailable here and will order a modification to the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying accident in this case occurred on December 6, 1996, in the parking lot of a drugstore located in Crescent City. Lammers and Harris were parked next to each other. Harris was behind her vehicle (an Izusu) and was handing balloons to her children inside. Lammers backed out of her parking space and then pulled forward. As she did so, she clipped the door of Harris's Izusu and pinned Harris against the back of the vehicle.

Based on these facts, Harris filed a complaint against Lammers seeking damages for the injuries she sustained. Lammers admitted that she had struck Harris's car, so the primary issue at trial was the extent of Harris's injuries. Harris claimed she suffered painful and permanent injuries to her back and left leg that would forever preclude her from resuming her previously active lifestyle. The defense argued Harris's injuries were minor and would have been resolved in three to six months. The defense also presented evidence which suggested that Harris had inflated her damages. Although Harris claimed she was forced to use crutches for two and one-half months the defense presented testimony from several witnesses who saw Harris dancing without difficulty at a party held three weeks after the accident. Three witnesses also testified that appellant had a poor reputation for honesty and truthfulness in her community. One described Harris as a "pathological liar." Another described her as being "not a very honest person." A third said "[y]ou just pretty much couldn't believe a word she said" and that because of this he "avoid[ed] her like the plague . . . ." These assessments were buttressed by an incident at trial. Prior to trial, Harris provided the court with what she declared, under penalty of perjury, was a "true and correct" copy of the vehicle registration for the Izusu that

was involved in the accident. The document indicated Harris's husband owned the vehicle. The issue was critical because, as we will describe below, the owner of a vehicle can, in certain circumstances, be precluded from recovering noneconomic damages. However at trial, the defense presented evidence which showed that Harris had altered the document by deleting her name as a registered owner.

The trial court considered this and other evidence and ruled in favor of Harris, awarding her $9,244.62 in economic damages, plus $12,000 in noneconomic damages for a total of award of $21,244.62. In limiting Harris to that amount, the court explained that Harris had been "untruthful" and that she had "attempted to enhance [her damages] for litigation purposes." Subsequently the court reduced the award by $14,360.12 to $6,884.50 pursuant to the provisions of Code of Civil Procedure section 998.

This appeal followed.

II. DISCUSSION

A. *Appeal\**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

B. *Cross-appeal*

Prior to trial, Lammers filed a motion for summary adjudication in which she asked the court to rule that Harris could not recover noneconomic damages. She relied on Civil Code section 3333.4, which "prohibits uninsured motorists . . . from collecting noneconomic damages in any action arising out of the operation or use of a motor vehicle." (*Yoshioka v. Superior Court* (1997) 58 Cal.App.4th 972, 978 [68 Cal.Rptr.2d 553].) Lammers supported the motion with discovery responses in which Harris admitted that the Izusu was not insured, that she owned the vehicle, and that she was driving it on the day in question. Harris opposed the motion. She did not deny the Izusu was not insured, but she claimed she did not own the vehicle and was not driving it. The trial court denied the motion. Lammers filed a petition for a writ with this court.[9] We denied the petition as to this issue.

The case proceeded to trial where the court reiterated in its statement of decision that Civil Code section 3333.4 did not apply to the case. However

---

\*See footnote, *ante*, page 1072.

[9]Lammers has asked this court to take judicial notice of the pleadings and exhibits that were filed in the prior writ proceeding. The request is granted.

the court expressly ruled that Harris did own the Izusu and that she had lied about not owning it.

Lammers now contends the trial court erred when it ruled Civil Code section 3333.4 did not apply under the facts of this case. We agree.

Civil Code section 3333.4, subdivision (a) states, in part, ". . . in any action to recover damages arising out of the operation or use of a motor vehicle, a person shall not recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages if any of the following applies [¶] . . . [¶] (2) The injured person was the owner of a vehicle involved in the accident and the vehicle was not insured as required . . . [¶] (3) The injured person was the operator of a vehicle involved in the accident and the operator can not establish his or her financial responsibility as required by the financial responsibility laws of this state."

Here, Harris does not dispute that the Izusu was not insured. Furthermore the trial court expressly found that Harris owned the Izusu. Thus both of the requirements set forth in Civil Code section 3333.4, subdivision (a)(2) are present. We next consider whether the general requirement set forth in Civil Code section 3333.4, subdivision (a) is satisfied; i.e., whether this was an action "arising out of the operation or use of a motor vehicle . . . ." Applying the latter of these tests,—whether this was an action "arising out of . . . [the] use of a motor vehicle"—we conclude it was.

Ordinarily courts give the words of a statute the meaning they have in everyday speech. (*Savnik v. Hall* (1999) 74 Cal.App.4th 733, 740 [88 Cal.Rptr.2d 417].) The rule is subject to the exception that "when a word used in a statute has a well-established *legal* meaning, it will be given that meaning in construing the statute." (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 19 [56 Cal.Rptr.2d 706, 923 P.2d 1].)

The phrase "arising out of" has a well-established legal meaning. Numerous cases have ruled that it refers to origin, such as whether something grows out of or flows from an event. (See, e.g., *Central Pathology Service Medical Clinic, Inc. v. Superior Court* (1992) 3 Cal.4th 181, 187 [10 Cal.Rptr.2d 208, 832 P.2d 924]; *Hartford Accident & Indem. Co. v. Civil Service Employees Ins. Co.* (1973) 33 Cal.App.3d 26, 32 [108 Cal.Rptr. 737].) We are not aware of any special legal meaning for the word "use" so we turn to the everyday meaning which is "the application or employment of something for some purpose . . . ." (American Heritage Dict. (2d college ed. 1985) p. 1331.)

▆▆ Here the evidence shows the accident occurred while Harris was behind her Izusu handing balloons to her children inside. Lammers pulled her car out of an adjacent parking space and pulled forward, clipping Harris's door and pinning her against the vehicle. Clearly Harris was "using" the Izusu to transport her children and supplies. Just as clearly, the accident arose out of and flowed from that use. Indeed, it appears that Harris was in the parking lot where the accident occurred precisely because she was using the Izusu to transport her children and supplies. We conclude this was an action "arising out of . . . [the] use of a motor vehicle" and that Civil Code section 3333.4 applied.

The result we reach is consistent with the statutory intent of Civil Code section 3333.4. The section was adopted as part of Proposition 213 in the 1996 General Election. (*Hodges v. Superior Court* (1999) 21 Cal.4th 109, 111 [86 Cal.Rptr.2d 884, 980 P.2d 433].) As our Supreme Court has noted, "a primary aim of Proposition 213 . . . was to limit *automobile insurance claims* by uninsured motorists. The electorate wanted to ensure that uninsured motorists, who contribute nothing to the insurance pool, would be restricted in what they receive from it. This principle of fairness fueled the initiative." (*Hodges, supra*, at p. 115.)

Here, the record strongly suggests that Harris had made an automobile insurance claim for the damages she sustained.[10] Furthermore, Harris's complaint was premised upon a cause of action for motor vehicle negligence. Harris, as an uninsured motorist, is precisely the type of person who the electorate intended to restrict. We conclude the trial court erred when it ruled Civil Code section 3333.4 did not apply under the facts of this case.

Harris contends this result is unwarranted because she was not driving the Izusu on the day of the accident. However as another court said when rejecting this identical argument, "Although driving is included within the concepts of operation and use of a vehicle, operation is a broader concept than driving and does not require that the vehicle be in motion or even have the engine running. . . . Operation includes stopping, parking on the highway, and other acts fairly regarded as a necessary incident to the driving of the vehicle. . . . Use is an even broader concept than operation. It extends to any activity utilizing the vehicle." (*Cabral v. Los Angeles County Metropolitan Transportation Authority* (1998) 66 Cal.App.4th 907, 913-914 [78 Cal.Rptr.2d 385], citations omitted.)

While it may be true that Harris was not driving the Izusu on the day of the accident, she was clearly using it. Under the facts of this case, we

---

[10]Counsel for Lammers stated, at oral argument, that Harris had made such a claim. Harris's counsel did not dispute the statement.

conclude Harris's use was sufficient to trigger the application of Civil Code section 3333.4.

## III.   DISPOSITION

The judgment is reversed to the extent that it awards Harris damages for noneconomic injuries. In all other respects the judgment is affirmed. The case is remanded to the trial court for further proceedings consistent with this opinion. Both parties shall bear their own costs on appeal.

Stevens, J., and Rivera, J.,* concurred.

---

*Judge of the Contra Costa Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.