[No. B152460. Second Dist., Div. One. Feb. 13, 2002.]

GENOVEVA ANAYA et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CITY OF LOS ANGELES et al., Real Parties in Interest.

## COUNSEL

Moreno, Becerra, Guerrero & Casillas, Gregory W. Moreno, Arnoldo Casillas, Frank Perez and Nicholas Sanchez for Petitioners.

No appearance for Respondent.

Waller Lansden Dortch & Davis, E. Lee Horton; Law Offices of David L. Bonar, David L. Bonar; Rockard J. Delgadillo, City Attorney, G. Daniel Woodard, Assistant City Attorney, and Robert Pulone, Deputy City Attorney, for Real Parties in Interest.

## OPINION

**VOGEL (MIRIAM A.), J.**—Eleven-year-old Norma Vides, a passenger in a car driven by Pedro Anaya, was seriously injured when Anaya's car

collided with a sanitation truck owned by the City of Los Angeles.[1] A helicopter owned by the City of Los Angeles picked up Norma to take her to the hospital. On the way, the helicopter crashed and Norma died. Norma's mother (Genoveva Anaya) and father (Alfredo Vides) sued the City of Los Angeles for wrongful death damages.[2] Plaintiffs (who owned the car) did not have liability insurance. Pedro Anaya (the 17-year-old driver) was uninsured and unlicensed. The City answered and conducted discovery, then filed a motion for summary adjudication in which it asked the trial court to determine, as a matter of law, that Plaintiffs' status as the uninsured owners and operators of an involved motor vehicle precludes their recovery of noneconomic damages. (Civ. Code, § 3333.4.)[3] Plaintiffs did not dispute the relevant facts but opposed the motion on the ground that Norma's death did not "arise out of" the collision within the meaning of section 3333.4. The trial court granted the motion. Plaintiffs then filed a petition for a writ of mandate, asking us to direct the trial court to vacate its order. We issued an order to show cause and set the matter for hearing. We now grant the petition as prayed.

## DISCUSSION

### A. *The Statute*

As relevant, section 3333.4 provides: "(a) . . . [I]n any action to recover damages arising out of the operation or use of a motor vehicle, a person shall not recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages if . . . [¶] . . . [¶] (2) The injured person was the owner of a vehicle involved in the accident and the vehicle was not insured as required by the . . . laws of this state [or] [¶] (3) The injured person was the operator of a vehicle involved in the accident and the operator can not establish his or her financial responsibility as required by the . . . laws of this state. . . ."

### B. *The Issue*

We have previously held that, for purposes of overcoming the truck drivers' demurrers, Plaintiffs have alleged facts sufficient to plead the

---

[1]There were several vehicles involved in the accident. Although it is not altogether clear at this stage of the proceedings, it appears that a sanitation truck (which had stopped on the street to collect garbage) was hit by a car. A second sanitation truck saw the disabled truck and stopped to assist. Pedro Anaya ran into the rear of the second truck. (See *Anaya v. Superior Court* (2000) 78 Cal.App.4th 971, 973, fn. 1 [93 Cal.Rptr.2d 228].)

[2]There are other plaintiffs (Norma's surviving siblings) and defendants (including the drivers of the sanitation trucks) but (with the exception of defendant William Bamattre, who is included in our references to the City of Los Angeles) the other parties are not involved in these writ proceedings.

[3]All section references are to the Civil Code.

elements of duty and breach for a negligence (wrongful death) cause of action. (*Anaya v. Superior Court, supra,* 78 Cal.App.4th at p. 976 [it is foreseeable to a driver that the victim of an automobile accident will have to be transported to a medical facility by automobile or helicopter and that, on the way, the victim may suffer further injuries].) As viewed by the City, this means we have found that its negligence in causing the automobile accident is (if proved) the cause of Norma's death in the helicopter crash; it follows, according to the City, that Norma's death necessarily "arose out of" the automobile accident. With regard to the City's liability (if any) as the owner of the sanitation trucks and the employer of the sanitation truck drivers, we agree. (*Harris v. Lammers* (2000) 84 Cal.App.4th 1072, 1076 [101 Cal.Rptr.2d 361] [as used in § 3333.4, "arising out of" means that "something grows out of or flows from an event"].) But we do not agree with the City that, as a result of this analysis, it is entitled to the benefit of section 3333.4, with regard to all of the Plaintiffs' claims.

The City's syllogism stops too soon, and ignores the fact that Plaintiffs have sued the City in two capacities—as the owner and operator of the sanitation trucks (the claim is that the drivers were not properly trained and, as a result, were negligent in the manner in which they stopped on the street) *and* as the owner and operator of the helicopter (the claim is that the helicopter was negligently maintained and operated).[4] For this reason, the ultimate question is whether the City's potential liability to Plaintiffs for the negligent maintenance and operation of the helicopter is limited by section 3333.4. The answer is "no."

## C.   *The Cases*

### 1.

In *Horwich v. Superior Court* (1999) 21 Cal.4th 272 [87 Cal.Rptr.2d 222, 980 P.2d 927], the Supreme Court held that section 3333.4 does *not* bar recovery of noneconomic damages in a wrongful death action brought by the

---

[4]Plaintiffs' second amended complaint includes 17 causes of action, including several against the City, to wit: the first cause of action for "gross negligence and conscious disregard for public safety," which alleges that the drivers were aware of the hazard caused by the way they stopped their trucks; the second cause of action for "dangerous condition of public property," which alleges that the collision was caused by the City's negligent design and construction of the roadway on which the collision occurred; the third cause of action for wrongful death, which alleges that the City was negligent *both* in the manner that its employees operated the sanitation trucks *and* in the manner in which it inspected, serviced, maintained, equipped, and operated the helicopter; and the 14th cause of action for a "violation of Plaintiffs' substantive due process rights." The remaining causes of action are against the manufacturers of the helicopter and its component parts, and against the manufacturer of the sanitation trucks.

noninvolved heirs of an uninsured owner or operator killed in an automobile accident—but the statute *does* preclude the recovery of noneconomic damages by a wrongful death plaintiff who was the uninsured owner or operator of the involved vehicle.

2.

In *Hodges v. Superior Court* (1999) 21 Cal.4th 109 [86 Cal.Rptr.2d 884, 980 P.2d 433], an uninsured motorist suffered injuries as the result of a rear-end collision that caused the rupture of the gas tank of the Ford Mustang he was driving. The motorist sued Ford, alleging that the gas tank was defective. Ford moved for summary adjudication, contending it was entitled to the benefits of section 3333.4. The Supreme Court disagreed, holding that a "products liability claim against an automobile manufacturer falls outside the scope of . . . section 3333.4." (*Hodges v. Superior Court, supra,* 21 Cal.4th at pp. 112-113.) This is the way the high court put it:

"It seems clear that a primary aim of Proposition 213, as relevant here, was to limit *automobile insurance claims* by uninsured motorists. The electorate wanted to ensure that uninsured motorists, who contribute nothing to the insurance pool, would be restricted in what they receive from it. This principle of fairness fueled the initiative. The right to recover fully for an injury caused by a design defect, even by an uninsured motorist, has no bearing on any principle of fairness having to do with the financial responsibility laws. It is not clear that *anyone*—either the sponsors of the measure or the voters—intended to protect from products liability claims manufacturers who do not contribute to that pool and whose other insurance rates are not affected by the existence of uninsured motorists.

"Proposition 213's statement of legislative purpose supports this view, identifying the principal intended beneficiaries of the measure as Californians who obey the financial responsibility laws. Thus, section 2 states [that] 'Insurance costs have skyrocketed for those Californians who have taken responsibility for their actions. Uninsured motorists . . . are law breakers and should not be rewarded for their irresponsibility and law breaking. However, under current laws, uninsured motorists . . . are able to recover unreasonable damages . . . . Californians must change the system that rewards individuals who fail to take essential personal responsibility to prevent them from seeking unreasonable damages or from suing law-abiding citizens. . . .' . . .

"With regard to uninsured motorists, the 'system' in need of change in order to 'restore balance to our justice system' is the one that permits those

who do not contribute to the insurance pool—and thereby drive up the costs of premiums for automobile insurance—to reap the benefits of the coverage paid for by law-abiding motorists. There is no suggestion that the proposed law would also change the 'system' with regard to products liability claims, or that any such change is needed. Moreover, use of the words 'Californians' and 'law-abiding citizens' indicates that the initiative was aimed principally at providing balance for *those who obey the financial responsibility laws,* not benefiting manufacturers whose design and manufacturing processes are not subject to those laws. [¶] . . . [¶]

"The ballot arguments, considered as a whole, similarly indicate that voters were being urged to distinguish between law-abiding motorists who pay for liability insurance, on the one hand, and law-breaking uninsured motorists who refuse to pay for such insurance, on the other. By limiting the amount of damages available to uninsured motorists, the law-abiding motorists would receive some savings in the form of reduced premiums. The arguments for and against the measure refer principally to remedying an imbalance in the justice system that resulted in unfairness when an accident occurred *between two motorists*—one insured and the other not. There is no suggestion that it was intended to apply in the case of a vehicle design defect." (*Hodges v. Superior Court, supra,* 21 Cal.4th at pp. 115-116.)

▇▇ The same analysis applies to Plaintiffs' claims against the City as the owner and operator of the helicopter. In that context, this is not an "automobile insurance claim," and this is not a dispute "between two motorists." The City, as owner and operator of the helicopter, is not a part of the system in need of change. As *Hodges* makes plain, Proposition 213 was intended to limit the damages recoverable by uninsured motorists when they sued "law-abiding motorists who pay for liability insurance," thereby giving the "law-abiding motorists . . . some savings in the form of reduced premiums." (*Hodges v. Superior Court, supra,* 21 Cal.4th at p. 116.) In short, section 3333.4 is intended to prevent unfairness when an accident occurs "between two motorists" (one insured, the other uninsured), not to operate as a windfall to a person or entity that is not part of the automobile insurance "system." (*Hodges v. Superior Court, supra,* 21 Cal.4th at pp. 115-116.)

3.

In *Day v. City of Fontana* (2001) 25 Cal.4th 268 [105 Cal.Rptr.2d 457, 19 P.3d 1196], the plaintiff was driving his motorcycle through an intersection when he was struck by a car. The plaintiff sued the driver of the car, the owner of property adjacent to the intersection, and both the city and county where the accident occurred, alleging two causes of action against the public

entity defendants—maintaining a dangerous condition of public property, and nuisance arising from the entities' failure to correct or warn of an obstruction. (*Id.* at p. 271.)

The Supreme Court held that section 3333.4 "precludes an uninsured motorcyclist injured in a vehicular accident from recovering an award of noneconomic damages against a county . . . in an action for nuisance and dangerous condition of public property." (*Day v. City of Fontana, supra,* 25 Cal.4th at p. 271.) *Horwich* and *Hodges* were distinguished this way: "[I]n *Horwich* . . . , recovery of noneconomic damages was sought by 'a person' who was not the uninsured owner or operator of the vehicle involved in an accident. . . . [*I*]*n Hodges, . . . there was no necessary connection between the plaintiff's injury and 'the operation or use' of the vehicle. . . .* [¶] In contrast to the factual scenarios presented in those previous decisions, the instant action against the public entity defendants appears to fall squarely within the terms of section 3333.4. First, plaintiff was the owner of an uninsured motorcycle. [Citation.] Second, plaintiff's action for nuisance and dangerous condition of public property seeks 'to recover damages arising out of the operation or use of [that] motor vehicle.' [Citation.] On this last point, we note the facts here are neither parallel nor analogous to those giving rise to the perceived ambiguity in *Hodges* [citation], for *here there was a necessary and causal relationship between the plaintiff's operation of his motorcycle and the accident for which he claimed the public entities were responsible.* Since section 3333.4 contains no exception for suits against public entities, plaintiff appears statutorily barred from recovering noneconomic damages against the County and the City." (*Day v. City of Fontana, supra,* 25 Cal.4th at pp. 273-274, italics added, fn. omitted.)

The "necessary and causal relationship" present in *Day* does not exist in the case now before us. In *Day,* the public entities' liability arose directly out of their responsibility for "the transportation infrastructure" in use by the uninsured motorist at the time of the accident. (*Day v. City of Fontana, supra,* 25 Cal.4th at p. 275.) As the Supreme Court explained, "when an uninsured driver causes damage to roadways or to other public property on or adjacent to the roadways, including traffic signs, directional signs, traffic signals, street lights, median strips, and landscaping, the public entity suffers a direct harm and public safety may sometimes be placed at risk until repairs to the property are made. In such situations, the public entity generally is left to bear the entire cost of the repairs necessitated by the uninsured tortfeasor's acts and financial irresponsibility.

"Violators of the financial responsibility law also detrimentally affect the interests of public entities in a more indirect way. *When the negligence of an*

*uninsured driver and the dangerous condition of public property combine to jointly cause injury to an insured driver, both tortfeasors are jointly and severally liable for all economic damages awarded to the insured driver.* [Citation.] Typically, however, the public entity's right of contribution [citation] from the uninsured tortfeasor is meaningless because the tortfeasor is judgment proof. In such circumstances, the public entity ends up paying all of the insured driver's economic damages while the uninsured driver pays nothing. [¶] . . . [¶]

"[W]ere we to construe the statute as being inapplicable in an action against a public entity *based upon property-related theories of liability such as nuisance and dangerous condition of property,* such an entity would remain legally responsible to compensate an uninsured driver for both economic and noneconomic losses arising out of vehicular accidents involving its property, while the uninsured driver could continue avoiding *any* responsibility for his or her fault in damaging such property and injuring third parties. . . ." (*Day v. City of Fontana, supra,* 25 Cal.4th at pp. 275-276, all but last italics added; see also Flahavan et al., Cal. Practice Guide: Personal Injury (The Rutter Group 2001) Evaluation of Damages, ¶ 3:254.2h, p. 3-191 [citing *Day* for the proposition that "public entities, as road owners and maintainers," are entitled to the benefit of § 3333.4].)

Since Plaintiffs' helicopter-related claims against the City of Los Angeles are not based upon "property-related" theories and do not allege theories arising out of the City's ownership or maintenance of its roads, *Hodges* trumps *Day* and compels the conclusion that section 3333.4 does not limit the City's liability to Plaintiffs on their helicopter-related claims.[5]

### D.

To avoid confusion and to emphasize the manner in which we have attempted to harmonize *Day* with *Hodges,* we summarize our previous and present holdings.

### 1.

We held in *Anaya v. Superior Court, supra,* 78 Cal.App.4th at page 976, that the City, *as the owner and operator of the sanitation trucks,* is potentially

---

[5]In two cases now pending before the Supreme Court, the issue is whether *private* property owners sued by uninsured motorists are entitled to the benefits of section 3333.4. (*Allen v. Sully-Miller Contracting Co.** (Cal.App.), review granted July 12, 2000, S088829; *Krough v. Reynolds Packing, Inc.* (2001) 91 Cal.App.4th 1243, review granted Dec. 12, 2001, S101309; and see *Day v. City of Fontana, supra,* 25 Cal.App.4th at p. 282, fn. 8 ["Because the instant action does not involve the liability of a private property owner, we need not and do not address such arguments or the possibility that other concerns may justify a different result in the case of such owners"].) Since we are concerned with a public entity, the pending cases are not dispositive.

---

*For Supreme Court opinion, see 28 Cal.4th 222.

liable to Plaintiffs for the damages they sustained as the result of Norma's death in the helicopter crash. We therefore agree with the City of Los Angeles that Plaintiffs' status as uninsured motorists bars their recovery from the City of noneconomic damages *arising out of the automobile collision.*

2.

We hold in these writ proceedings that the City, *as the owner and operator of the helicopter,* is not entitled to the benefit of section 3333.4—because Plaintiffs' helicopter-related theories are that the City negligently inspected, serviced, maintained, equipped, and operated the helicopter, *none of which are property-related theories of liability* related to the City's roads and highways. Just as a products liability claim against the manufacturer of the vehicle involved in an accident lacks the "necessary connection" between the uninsured motorist's injury and his operation or use of the vehicle (*Day v. City of Fontana, supra,* 25 Cal.4th at p. 273), so too does plaintiffs' claim against the City *as the owner and operator of the helicopter* lack the "necessary connection" between plaintiffs' injury (Norma's death) and plaintiffs' operation and use of the vehicle that collided with the sanitation truck.

The City, in its capacity as owner and operator of the helicopter, faces "no potential of direct harm to itself or its property from uninsured drivers who fail[] to comply with the state financial responsibility law." (*Day v. City of Fontana, supra,* 25 Cal.4th at p. 281.) In addition, there is nothing in the record before us to suggest that the City, as owner and operator of the helicopter, is "affected by the existence of uninsured motorists" or that, in this capacity, it was "among those whom the initiative was intended to protect." (*Ibid.*) And there is nothing about the capacity in which the City is sued as owner and operator of the helicopter "that directly implicates a 'principle of fairness having to do with the financial responsibility laws.' " (*Id.* at pp. 281-282.)

3.

We leave it to the parties and the trial court to draft appropriate jury instructions and verdict forms for the jurors' allocation of damages, and we express no views on those issues.[6]

---

[6]Plaintiffs' second cause of action alleges that the City knowingly maintained a dangerous condition of public property and negligently designed the roadway where the collision occurred. Because the parties have not discussed the application of section 3333.4 to those theories, we refrain from stating the obvious.

## DISPOSITION

The petition is granted, and a writ shall issue commanding the superior court (1) to vacate its order granting the City's motion for summary adjudication and (2) to issue a new order denying the City's motion. Plaintiffs are entitled to their costs of these writ proceedings.

Spencer, P. J., and Mallano, J., concurred.

The petition of real parties in interest for review by the Supreme Court was denied June 12, 2002. Kennard, J., was of the opinion that the petition should be granted.