[No. B212874. Second Dist., Div. Three. May 21, 2010.]

TECKLA CHUDE, Plaintiff and Appellant, v.
JACK IN THE BOX INC., Defendant and Respondent.

**COUNSEL**

Law Offices of Martin D. Gross and Martin D. Gross for Plaintiff and Appellant.

Law Offices of Charles Peterson, Charles Peterson and Richard G. Berg for Defendant and Respondent.

**OPINION**

**ALDRICH, J.—**

## INTRODUCTION

Plaintiff, Teckla Chude, an uninsured driver, suffered second-degree burns when she spilled the coffee she had just purchased at the drive-through window of defendant Jack in the Box Inc. (JIB). Her negligence action was resolved after the trial court granted JIB's motion for summary adjudication of Chude's claim for noneconomic damages. The court relied on Proposition 213, Civil Code section 3333.4,[1] which bars uninsured motorists and convicted drunk drivers from recovering noneconomic damages in certain cases. At issue in Chude's appeal is whether section 3333.4 precludes Chude from recovering an award of noneconomic damages. We hold that it does and affirm the judgment.

---

[1] Hereinafter all references are to the Civil Code, unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND ·

The following facts are undisputed: Chude drove to the JIB on Cesar Chavez Boulevard in Los Angeles in her own car. Arriving at the drive-through menu board, Chude stopped her car and placed an order for a breakfast sandwich and a cup of hot coffee. She then drove into the drive-through lane and pulled up to the drive-through window. Chude remained seated in the driver's seat of her car, in her seatbelt, with the engine running, the transmission in "drive," and her foot on the brake pedal. After Chude paid for her order, the JIB employee handed her the food and the cup of coffee. Chude took the coffee from the employee and brought it inside her car. The cup dropped into her lap leaving the lid in her hands. Coffee apparently pooled on the seat below her. Chude's car rolled forward and so she put the transmission in "park." However, she could not open the car door to unbuckle her seatbelt because the car was too close to a wall, with the result that Chude spent two to three minutes "trying to get [her] butt off . . . the" seat and out of the pooled coffee. Chude suffered second-degree burns and skin discoloration to her buttock and thigh. Her buttock injuries prevented her from working, sitting, or driving, and so she missed two weeks of school and received an incomplete, and missed an opportunity for an internship.

Chude brought her action against JIB alleging negligence and seeking both economic and noneconomic damages. JIB answered the complaint generally and specifically denying each of the allegations, and posed, as one of its 40 affirmative defenses, that section 3333.4 precluded Chude from recovering noneconomic damages against JIB because she was injured while operating her motor vehicle, which was not insured. JIB moved for summary adjudication on this ground and asserted, among its undisputed facts, that neither Chude nor her automobile were covered by automobile liability insurance at the time of the incident. Thus, Chude did not have financial responsibility as provided for in Vehicle Code section 16021.[2] Meanwhile, it is JIB's policy not to serve anyone at a drive-through window who is not in a motorized vehicle. At the time of the incident, JIB maintained a policy of liability insurance through which it was insured for the damages and claims that arose from this incident.

[2] California law requires owners and operators of motor vehicles to maintain several specified forms of financial responsibility, one of which is liability insurance. (Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2009) ¶ 7:1151, p. 7D-1 (rev. # 1, 2006), citing Veh. Code, §§ 16020–16021.)

The trial court granted JIB's motion. The parties stipulated to entry of judgment and Chude timely appealed.

## CONTENTION

Chude contends that section 3333.4 does not apply in this case to preclude her recovery of noneconomic damages.

## DISCUSSION

"Section 3333.4 was enacted through passage of Proposition 213 in the November 5, 1996 General Election. Denominated and publicized as the Personal Responsibility Act of 1996, Proposition 213 sought to restrict the ability of uninsured motorists, convicted drunk drivers and convicted felons to sue for losses suffered in accidents." (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 274 [105 Cal.Rptr.2d 457, 19 P.3d 1196] (*Day*).)

 Section 3333.4 "prohibits uninsured motorists . . . from collecting noneconomic damages in any action arising out of the operation or use of a motor vehicle." (*Yoshioka v. Superior Court* (1997) 58 Cal.App.4th 972, 978 [68 Cal.Rptr.2d 553].) In relevant part, it provides: "(a) Except as provided in subdivision (c), *in any action to recover damages arising out of the operation or use of a motor vehicle*, a person shall not recover non-economic losses to compensate for pain, suffering, inconvenience, physical impairment, disfigurement, and other nonpecuniary damages if any of the following applies: [¶] . . . [¶] (2) The injured person was the owner of a vehicle involved in the accident and the vehicle was not insured as required by the financial responsibility laws of this state." (§ 3333.4, subd. (a)(2), italics added.)

Preliminarily, we observe that Chude does not deny that she owned the car and that it was not insured. The question here is whether Chude's lawsuit is an "action to recover damages arising out of the operation or use of a motor vehicle" under subdivision (a), such as would trigger the bar of section 3333.4. This issue has arisen before and so we defer to the authorities.

 "Ordinarily courts give the words of a statute the meaning they have in everyday speech. [Citation.] The rule is subject to the exception that 'when a word used in a statute has a well-established *legal* meaning, it will be given that meaning in construing the statute.' [Citation.]" (*Harris v. Lammers* (2000) 84 Cal.App.4th 1072, 1076 [101 Cal.Rptr.2d 361].)

"Although driving is included within the concepts of operation and use of a vehicle, operation is a broader concept than driving and does not require that the vehicle be in motion or even have the engine running. [Citation.] Operation includes stopping, parking on the highway, and other acts fairly regarded as a necessary incident to the driving of the vehicle. [Citation.] . . . Use is an even broader concept than operation. It extends to any activity utilizing the vehicle . . . [citations][, and includes] parking, leaving the doors open, and failing to set the parking brake. [Citation.]" (*Cabral v. Los Angeles County Metropolitan Transportation Authority* (1998) 66 Cal.App.4th 907, 913–914 [78 Cal.Rptr.2d 385].)

In *Cabral*, the appellate court held that where the plaintiff was exiting his car when he was hit by a bus, his injuries arose out of the operation or use of his motor vehicle. (*Cabral v. Los Angeles County Metropolitan Transportation Authority, supra*, 66 Cal.App.4th at p. 910.) Here, Chude was sitting in her car at the drive-through window with the motor running, the transmission engaged, and her foot on the brake. She was clearly operating the vehicle as well as using it.

"The phrase 'arising out of' has a well-established legal meaning. Numerous cases have ruled that it refers to origin, such as whether something grows out of or flows from an event. [Citations.] We are not aware of any special legal meaning for the word 'use' so we turn to the everyday meaning which is 'the application or employment of something for some purpose . . . .' [Citation.]" (*Harris v. Lammers, supra*, 84 Cal.App.4th at p. 1076.)

Chude argues that there is no nexus between her injury and her "operation or use" of the vehicle and so, to preclude her recovery of noneconomic damages would serve to benefit JIB "in a manner not remotely intended by the voters" of Proposition 213. She argues that the negligent act here had no relationship to the use of a motor vehicle. We disagree.

*Harris v. Lammers, supra*, 84 Cal.App.4th 1072 is on point. There, the plaintiff was injured while standing in a drugstore parking lot behind her uninsured vehicle and handing out balloons to her children inside. (*Id.* at p. 1074.) The *Harris* court held that the accident occurred while the plaintiff was " 'using' " the vehicle to transport her children and supplies. Thus, the accident "arose out of" and flowed from that "use." "Indeed, it appears that Harris was in the parking lot where the accident occurred *precisely because*

*she was using the [vehicle] to transport her children and supplies.* We conclude this was an action 'arising out of . . . [the] use of a motor vehicle' and that Civil Code section 3333.4 applied." (*Harris v. Lammers, supra,* at p. 1077, italics added.)

Likewise, here, Chude used her car to drive up to the drive-through window. Even more than the plaintiff in *Harris* or *Cabral,* both of whom had parked and were outside of their vehicles, Chude was seated *inside* her car, with her seatbelt on, with the motor running and the transmission engaged. Here, the accident "arose out of" her "operation" *and* "use of" her vehicle at the time of the incident. More important, Chude would not have been in the drive-through lane purchasing coffee but for her vehicle. It is JIB's policy not to serve anyone at a drive-through window who is not in a motorized vehicle. Thus, the accident "arose out of" or "flowed" from Chude's operation and use of her vehicle. Stated otherwise, she was in the drive-through lane precisely because she was using her car to purchase coffee from the drive-through window part of the restaurant. Accordingly, this "action to recover damages ar[ose] out of the operation or use of a motor vehicle" and so section 3333.4, subdivision (a) applies to bar her recovery of noneconomic damages.

We requested the parties to address "[w]hether the uninsured vehicle in this case was involved in an '*accident*' as contemplated by Civil Code section 3333.4, subdivision (a)(2)." (Italics added.)

In her supplemental brief, Chude argued that the "accident" was the negligent act of failing to secure the coffee cup's lid properly. This act, she argues "happened to have taken place inside a vehicle, [but] not because of" the vehicle with the result the accident did not involve the operation or use of a motor vehicle. JIB counters that Chude would not have been in the drive-through lane *but for* her vehicle. She *drove* into the "*drive*-thru" lane and *drove* up to the "*drive*-thru" window. Because of JIB's rules, Chude would not have been served—and this accident would not have occurred— had she not chosen to order from her vehicle. The vehicle was an indispensible condition precedent to the accident. That is, but for the vehicle, there would not have been an accident.

Our Supreme Court has visited the issue of whether a driver of an uninsured vehicle was involved in an accident that arose out of the operation or use of the vehicle. Each of the cases arose out of the particular factual

circumstances present. (*Hodges v. Superior Court* (1999) 21 Cal.4th 109 [86 Cal.Rptr.2d 884, 980 P.2d 433] [§ 3333.4 does not bar recovery of noneconomic damages by an uninsured motorist in a defective design products liability action against an automobile manufacturer for defective gas tank that exploded after it was struck from rear]; *Horwich v. Superior Court* (1999) 21 Cal.4th 272 [87 Cal.Rptr.2d 222, 980 P.2d 927] [§ 3333.4 does not bar recovery of noneconomic damages by wrongful death plaintiffs whose decedent was the uninsured operator of vehicle involved in two-car accident]; *Day, supra*, 25 Cal.4th 268; *Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222 [120 Cal.Rptr.2d 795, 47 P.3d 639] (*Allen*).)

In *Day*, the Supreme Court held that section 3333.4 precluded an uninsured motorcyclist from recovering noneconomic damages in an action against a public entity for nuisance and dangerous condition of public property after his motorcycle was struck by an automobile. (*Day, supra*, 25 Cal.4th at p. 271.) The facts of *Day* "fall squarely within the terms of section 3333.4." (*Day, supra*, 25 Cal.4th at p. 273.) The plaintiff was the owner of an uninsured motorcycle (§ 3333.4, subd. (a)(2)). His action for nuisance and dangerous condition of public property sought " 'to recover damages arising out of the operation or use of [that] motor vehicle.' (*Id.*, subd. (a).)" (*Day, supra*, at p. 273.) With respect to the second element, the *Day* court observed, "there was a *necessary and causal relationship* between the plaintiff's operation of his motorcycle and the accident for which he claimed the public entities were responsible," i.e., the dangerous condition of property. (*Id.* at p. 274, italics added.) The *Day* court rejected the plaintiff's argument that section 3333.4 applies solely to actions involving accidents *between motorists*. (25 Cal.4th at p. 278.)

■ *Allen* followed *Day* to hold that section 3333.4 bars an uninsured motorcyclist from recovering noneconomic losses in his premises liability action against a private construction company. (*Allen, supra*, 28 Cal.4th at p. 225.) The court noted that the lawsuit fell squarely within section 3333.4 because (1) the plaintiff's motorcycle was uninsured, and (2) the action sought to recover for damages that occurred when the tire of the motorcycle caught on an uneven street surface, causing his motorcycle to fall. *Day* and *Allen* tell us that Proposition 213 does not apply only to accidents between two motorists, and can come into play when the injury is caused by something outside the uninsured vehicle. The test, clearly, is whether the "damages" arose out of the operation or use of the car. Therefore, we agree

with JIB that the word "accident" in section 3333.4, subdivision (a)(2) refers to, or is another way of saying, the event arising from the operation or use of the motor vehicle that caused the "damages" in subdivision (a).

■ The question, it seems to us, is what part did the uninsured vehicle play in the injuries Chude sustained. We have already concluded that this action arose out of the operation and use of the uninsured vehicle. Chude argues that the negligent act here, namely, failing to secure the lid on the coffee cup, did not occur because of the vehicle. But we cannot dissociate Chude's injuries from the fact that they occurred in the vehicle. She was sitting in her car and so the spilled coffee pooled in the seat below her. Escape proved difficult because she was strapped in by her seatbelt. She tried for two to three minutes to lift herself off the seat and out of the scalding coffee. She was compelled to put the car in park in an attempt to extricate herself from the seatbelt and car. Because the hot liquid pooled in the seat below Chude, the injuries she suffered were to her buttocks and thigh. In sum, Chude's specific injuries were caused and exacerbated by the vehicle itself. Had she been standing at the takeout counter, presumably the coffee might have spilled on her shoe, but she would not have been forced to sit in a puddle of hot liquid as she tried to extricate herself from a seatbelt. As in *Day*, "there was a necessary and causal relationship between the plaintiff's operation of [her vehicle] and the accident for which [she] claimed the [defendant was] responsible." (*Day, supra*, 25 Cal.4th at p. 274.) We need not address what would have happened had Chude reached out her window to take the cup and spilled coffee on her outstretched arm, because those were not the facts of this case. Clearly here Chude's injuries were caused and exacerbated by the vehicle itself.

Chude's citation to *Hodges v. Superior Court, supra*, 21 Cal.4th 109, is unavailing. There, the uninsured motorist brought a products liability action against the manufacturer of his car after he suffered injuries when his vehicle was struck in the rear and the gas tank exploded. (*Id.* at p. 111.) The Supreme Court held that section 3333.4 was "not pellucid," but that the products liability action against an automobile manufacturer fell outside the scope of section 3333.4 because, inter alia, to limit a plaintiff's recovery in a products liability action "would appear inconsistent with the long-standing public policy goal of requiring manufacturers to bear the costs of injuries from defective products. [Citation.]" (*Hodges v. Superior Court, supra*, at pp. 118–119.) In *Hodges*, there was no causal relationship between the plaintiff's operation of his vehicle and the damage, where the manufacturing defect preexisted the incident. (*Day, supra*, 25 Cal.4th at p. 274.) By contrast,

as explained, there is a clear and direct causal relationship between Chude's operation of her vehicle and the accident for which she claims JIB is responsible. (*Ibid.*)[3]

As section 3333.4 is a remedial statute, it must be construed broadly to effect its purposes. (*Cabral v. Los Angeles County Metropolitan Transportation Authority, supra*, 66 Cal.App.4th at p. 914.) Our interpretation of the statute's term "operation or use" to include this case effectuates the purposes of Proposition 213. The accident might have been covered by liability insurance had Chude obtained such insurance as she is required to do by law. The initiative sought to ameliorate rising insurance premiums by encouraging uninsured motorists to obtain insurance. (*Cabral*, at p. 915.) Limiting Chude's damages arising out of an accident for which she could have obtained insurance encourages her to obtain the required insurance. The initiative also sought to " 'restore balance to our justice system' by ensuring that those 'who fail to take essential personal responsibility' would 'not be rewarded for their irresponsibility and law breaking.' " (*Day, supra*, 25 Cal.4th at p. 275, quoting Ballot Pamp., Gen. Elec. (Nov. 5, 1996) analysis of Prop. 213 by Legis. Analyst, § 2, p. 102.) Limiting Chude's damages in this case to economic losses would likely "equalize the litigation benefits for insured plaintiffs suing uninsured defendants and uninsured plaintiffs suing insured defendants." (*Cabral, supra*, at p. 915.) By contrast, construing the statute to be inapplicable would mean that the property owner would remain legally responsible to pay the uninsured driver for both economic and noneconomic losses arising out of vehicle-related accidents while uninsured drivers could continue blithely avoiding any responsibility for injuries. As the court in *Day* observed: "Such a construction would appear to perpetuate a system of one-sided recovery favoring the uninsured driver at the expense of the law-abiding entity, thus undermining the initiative's goal to prevent such drivers from being 'rewarded for their irresponsibility and law breaking.' [Citation.]" (*Day, supra*, at p. 276.) At the time of the incident, JIB maintained a policy of comprehensive general liability insurance through which it contributed to the larger insurance pool. Were we to construe section 3333.4 as inapplicable here, JIB would remain legally responsible to compensate an uninsured driver for both economic and noneconomic losses arising out of the accident where only JIB obeyed the law by obtaining insurance. Such a result would reward Chude for breaking the law. (See *Day, supra*, 25 Cal.4th 268.)

---

[3] Nor does *Horwich v. Superior Court, supra*, 21 Cal.4th 272, require a different result. There, the parents of the decedent uninsured driver brought a wrongful death action against the driver of the other car involved in the accident. (*Id.* at p. 275.) The Supreme Court held that section 3333.4 did not bar recovery by the plaintiffs of noneconomic damages because the plaintiffs were not the uninsured owners or operators of a vehicle involved in the accident. Here, Chude was both the owner and the operator of the uninsured vehicle at the time of the accident.

## DISPOSITION

The judgment is affirmed. Respondent is awarded costs on appeal.

Klein, P. J., and Kitching, J., concurred.