Filed 3/27/25  Hickman v. City of Torrance CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ERIC HICKMAN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF TORRANCE,<br><br>    Defendant and Respondent. | B339186<br><br>(Los Angeles County<br>Super. Ct. No. 19STCV37386) |

Appeal from an order of the Superior Court of Los Angeles County, Bobbi Tillmon, Judge.  Affirmed.

Eric Hickman, in pro. per., for Plaintiff and Appellant.

Hawkins Parnell & Young, Jerry C. Popovich and Ryan M. Sellers for Defendant and Respondent.

————————————————

Eric Hickman sued the City of Torrance (the City) in connection with injuries he sustained in a motorcycle accident allegedly caused by a dangerous condition—a pothole—on a public street maintained by the City. After Hickman rejected the City's $350,000 compromise offer, the case proceeded through a two-phase bench trial.

The trial court's task in phase one was limited to resolving the parties' dispute concerning the potential application of Civil Code[1] section 3333.4 to Hickman's claim. That section, enacted through the passage of Proposition 213 in the November 5, 1996 General Election, "bars uninsured motorists and convicted drunk drivers from recovering noneconomic damages in certain cases." (*Chude v. Jack in the Box Inc.* (2010) 185 Cal.App.4th 37, 39; see § 3333.4.) The City alleged that Hickman was operating an uninsured 2003 Harley Davidson motorcycle at the time of the accident, and that section 3333.4 therefore prohibited him from pursuing any noneconomic damages.

In support of this theory, the City offered testimony from several witnesses at the phase one trial, including Officer Anthony Fontanez, the first police officer to arrive at the scene of the accident. Officer Fontanez testified that he observed a motorcyclist (later identified as Hickman) lying on the ground next to a single motorcycle. He did not observe any other vehicles at the accident site. Officer Fontanez testified further that, using his portable radio, he read the license plate number for the lone motorcycle at the scene to dispatchers in real time. Other evidence introduced by the City established that the license plate number that Officer Fontanez provided to dispatchers corresponded to a 2003 Harley Davidson motorcycle registered to a Chad Combs.

---

[1] Unspecified statutory references are to the Civil Code.

2

Hickman maintained, in contrast, that he was riding a 2004 Harley Davidson owned and insured by his friend, Mark Kaake, at the time of the accident. Hickman alleged further that his former classmate, Keith Hancock, witnessed the accident and moved the 2004 Harley Davidson from the accident site to the parking lot of a nearby bar before any officers arrived on the scene. As a result, Hickman argued, Officer Fontanez could have confused the 2004 Harley Davidson involved in the accident with another motorcycle in the bar's parking lot, and thus might have provided dispatchers with an incorrect license plate number. In addition to testifying on his own behalf, Hickman introduced live testimony from Kaake and excerpts of Hancock's deposition testimony in support of this version of events.

At the conclusion of the phase one trial, the court issued a five-page statement of decision in which it found that (1) Hickman was operating an uninsured 2003 Harley Davidson at the time of the accident, and (2) section 3333.4 therefore barred Hickman from recovering noneconomic damages from the City. Although the court found in favor of Hickman during the phase two trial on the merits of his dangerous condition claim, the court awarded him only $70,300 in economic damages. Because this amount was less than the City's $350,000 pretrial compromise offer, the court determined pursuant to Code of Civil Procedure section 998, subdivision (c)(1)[2] that the City was entitled to recover certain of its litigation costs,

_____

[2] Code of Civil Procedure section 998, subdivision (c)(1) provides, in pertinent part: "If [a compromise] offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover [his/her/their] postoffer costs and shall pay the defendant's costs from the time of the offer." (Code Civ. Proc., § 998, subd. (c)(1).)

less Hickman's $70,300 award. The court therefore entered judgment in the amount of $88,997.80 in favor of the City.

Acting in propria persona, Hickman now asks us to reverse the judgment. Although not entirely clear from his briefing, Hickman appears to advance five arguments: (1) the trial court's statement of decision mischaracterizes Hancock's deposition testimony, (2) the City failed adequately to disclose Officer Fontanez's testimony prior to trial, (3) Officer Fontanez was not credible, (4) the trial court demonstrated bias, and (5) "Rule 60(b)(3)" entitles Hickman to relief.

We conclude, however, that Hickman fails to demonstrate any reversible error. Hickman establishes no injury from the court's alleged factual mistake in the statement of decision; he has forfeited his claim of judicial bias and his challenge to the admissibility of Officer Fontanez's testimony; his arguments concerning the substance of Officer Fontanez's testimony improperly invite us to second-guess the trial court's assessment of witness credibility; and Hickman's reliance on "rule 60(b)(3)"—presumably a reference to Rule 60(b)(3) of the Federal Rules of Civil Procedure—is misplaced in these state court proceedings.

Accordingly, we affirm.

### FACTUAL SUMMARY AND PROCEDURAL HISTORY[3]

On July 27, 2018, Hickman hit a pothole on a street near Texas Loosey's bar in the City of Torrance and crashed the Harley Davidson motorcycle he was riding. He suffered a broken leg, a fractured wrist, and other injuries as a result of the accident.

---

[3] We summarize here only the facts and procedural history relevant to our resolution of this appeal.

Hickman, then represented by counsel,[4] filed a complaint against the City alleging that its failure to repair the pothole had created a dangerous condition of public property. Hickman rejected the City's offer pursuant to Code of Civil Procedure section 998 to resolve his claim for $350,000, and the case proceeded through a bench trial.

Prior to trial, the City raised an affirmative defense pursuant to section 3333.4, subdivision (a)(3), which prohibits an uninsured motorist from recovering noneconomic damages sustained in a motor vehicle accident. (See § 3333.4, subd. (a)(3).) The City alleged that Hickman was operating an uninsured 2003 Harley Davidson motorcycle at the time of the accident and therefore was prohibited from recovering noneconomic damages. Hickman countered that, at the time of the accident, he was riding a 2004 Harley Davidson motorcycle owned and insured by his friend, Kaake, who had given him permission to use the bike.

The court bifurcated the trial into two phases, with phase one devoted to resolving the parties' dispute concerning the applicability of section 3333.4 to Hickman's claim. The parties stipulated in advance of the phase one trial "that the 2004 motorcycle was insured by Pacific Specialty Insurance on the date of the accident and that the 2003 motorcycle was not insured." Given these stipulations, the phase one bench trial was limited to two issues: (1) whether, at the time of the accident, Hickman was operating the uninsured 2003 Harley Davidson or Kaake's insured 2004 Harley Davidson, and (2) if the latter, whether Hickman had Kaake's

---

[4] Hickman was represented by counsel in the underlying litigation up until closing arguments in the phase two trial. Hickman elected to represent himself during those closing arguments.

5

permission to operate the 2004 Harley Davidson on the date of the accident.

The City presented three witnesses at the phase one trial: Francis Abdur-Rahim, a public safety communications supervisor for the City, Officer Anthony Fontanez, the first police officer to arrive on the scene of the accident, and Hickman himself, pursuant to Evidence Code section 776.[5] Hickman likewise presented testimony from three witnesses. In addition to testifying on his own behalf, Hickman called Kaake as a live witness, and introduced deposition testimony from Hancock, who had been drinking at Texas Loosey's on the date of the accident and had witnessed the crash.

Abdur-Rahim testified that the City maintains data concerning every call its public safety dispatchers receive concerning traffic accidents, and that this data can be extracted into a call detail report. She testified further that the call detail report prepared in connection with Hickman's accident—which the court admitted as a trial exhibit—indicates that the only vehicle found at the scene was a 2003 Harley Davidson motorcycle registered to an individual named Chad Combs. In addition, Abdur-Rahim testified that the term "non-desirous" that appears in the report indicates that the party or parties involved in the accident did not wish the responding officers to prepare a traffic collision report for the incident.

Consistent with Abdur-Rahim's testimony and the call detail report, Officer Fontanez testified that he observed only one motorcycle when he arrived at the scene of the accident, and that "the [motorcycle's] operator or the person who appeared to be the

_____

[5] Evidence Code section 776 allows a party to call an adverse party as a witness. (Evid. Code, § 776, subd. (a).)

6

operator [was] lying next to the motorcycle." After blocking traffic to protect the downed motorcyclist, Officer Fontanez "read the license plate" affixed to the motorcycle "via [his] portable radio to dispatch for them to know which vehicle was involved in the collision."

Officer Fontanez conceded on cross-examination that, in a pretrial declaration filed in support of one of the City's motions in limine, he had provided information concerning Hickman's accident based solely on the contents of the "call detail report and [his] custom and practice," rather than from his independent recollection of the accident. (Capitalization omitted.) Officer Fontanez conceded further that he had responded to many traffic accidents over the course of his career. He insisted, however, that Hickman's accident stood out in his mind for two reasons:

"One, I don't respond lights and sirens, code 3, to every collision. That's a very small percentage of the collisions I respond to; and two, whenever there's a motorcycle down I respond to, it kind of sticks out in my mind, because I actually was riding a motorcycle during that time. And I'm always concerned about the rider on that motorcycle. So I have not—although I responded to the—many accidents, I have not responded to many motorcycle accidents. That's why I have a clear memory about it."

Contrary to the testimony of Abdur-Rahim and Officer Fontanez, Hickman testified that he was riding Kaake's 2004 Harley Davidson at the time of the accident. He testified further that, before police arrived, Hancock pushed the damaged motorcycle into the parking lot of Texas Loosey's bar. In response to questions from the City's counsel, Hickman denied having any knowledge that his license was suspended at the time of the accident.

Kaake's testimony generally corroborated that of Hickman: Kaake testified that he owned a 2004 Harley Davidson at the

7

time of the accident, that he had asked Hickman to care for the motorcycle temporarily, and that he had given Hickman permission to use the motorcycle. Kaake testified further that, approximately a week after the accident, he picked the 2004 Harley Davidson up from the parking lot of Texas Loosey's. On cross-examination, Kaake admitted to having two prior felony convictions for driving a vehicle without the owner's consent, as well as a felony conviction for possession of methamphetamine. Kaake also conceded that he had no photographs of any damage to the motorcycle or any repair estimates documenting the purported damage.

Finally, via deposition testimony admitted at the phase one trial, Hancock testified that he witnessed the crash, and that he and "some other guy" "went over to check on [Hickman]" immediately following the accident. Hancock testified further that Hickman was saying "My bike. My bike," and Hancock therefore "grab[bed] [Hickman's] bike and move[d] it and put it up—put it [up] by the bar[, i.e., Texas Loosey's]."

Following the close of evidence, the court took the phase one issues under submission. The court subsequently issued a five-page statement of decision (1) finding that Hickman was operating an uninsured Harley Davidson motorcycle at the time of the accident, and (2) concluding that, as a result, section 3333.4 precluded Hickman from recovering noneconomic damages.

The case proceeded to phase two of the bench trial concerning the merits of Hickman's dangerous condition claim. At the conclusion of the phase two trial, the court found in favor of Hickman and entered a judgment awarding him $70,030 in past and future medical expenses.

The City, however, moved the court to enter an amended judgment in its favor pursuant to section 998, subdivision (c) because (1) Hickman failed to obtain an award more favorable than

the City's $350,000 compromise offer, and (2) the City's $159,297.80 in costs incurred in litigating the case exceeded Hickman's $70,300 award by $88,997.80. The court entered judgment in the amount of $88,997.80 in the City's favor on April 19, 2024.

Hickman timely appealed.

## DISCUSSION

Although not entirely clear from his briefing on appeal, Hickman appears to advance five arguments in support of his request that we reverse the judgment entered in favor of the City. None is persuasive.

First, Hickman contends that the trial court's statement of decision mischaracterizes the deposition testimony concerning when Hancock allegedly moved the motorcycle involved in the accident to the parking lot of Texas Loosey's. Hickman is correct that the statement of decision arguably contains a factual error on this point. The statement of decision provides, in pertinent part: "[Hancock's] testimony did not include the time he moved the motorcycle other than it was after the police officers arrived." But the portion of Hancock's deposition testimony admitted at the phase one trial makes no express mention of any police officers. Instead, Hancock testified only that "some other guy . . . who [Hancock believed] called the paramedics" was on the scene of the accident before Hancock purportedly relocated the motorcycle.

Hickman, however, fails to demonstrate any injury from the trial court's alleged factual error. (See *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286 (*Santa Maria*) ["[w]hether legal or factual, no error warrants reversal unless the appellant can show injury from the error"].) Hickman urges that, had it properly understood Hancock's testimony, the court would have concluded that (1) Hancock moved the motorcycle to the Texas Loosey's parking lot before Officer Fontanez arrived on the scene, and

9

(2) Officer Fontanez therefore might have confused the 2004 Harley Davidson allegedly involved in the accident with a 2003 Harley Davidson in the bar's parking lot.

The statement of decision forecloses this possibility, as it provides expressly that "[t]he court [found] it unlikely that [Hancock] moved the motorcycle before the first police officer arrived since [Hickman's] injures were significant, [Hancock] was one of the first people to reach [Hickman,] who was lying in the street[,] and the first patrol officer arrived very shortly after the matter was reported as an emergency."  Hickman therefore fails to establish that the alleged factual error in the statement of decision compels reversal.  His reliance on *In re Marriage of Davis* (1983) 141 Cal.App.3d 71, does not persuade us otherwise.  *Davis* is distinguishable because the trial court in that case failed entirely to rule upon proposed factual findings.  (*Id*. at p. 73.)

Second, Hickman argues that the City failed adequately to disclose the substance of Officer Fontanez's testimony prior to trial, in violation of the right to due process and rule 26 of the Federal Rules of Civil Procedure.  As an initial matter, Hickman did not move to exclude or otherwise object to Officer Fontanez's testimony at trial.[6]  He therefore has forfeited any challenge to the admission of the testimony based on the City's purported failure to comply with its discovery obligations.[7]  (See, e.g., *Crouch v. Trinity*

_____

[6] The motion *in limine* to which Hickman cites in his briefing is a motion filed by *the City* to exclude belatedly disclosed evidence from trial.

[7] The City disputes that it failed to abide by its discovery obligations, arguing that it "disclosed Officer Fontanez . . . in discovery years before trial and [Hickman's] then counsel knowingly and intentionally withdrew [the] notice[ ] of deposition of Officer Fontanez."

*Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1020 ["[t]he failure to object or move to strike evidence at trial forfeits any challenge to the evidence on appeal"]; *In re Dakota H.* (2005) 132 Cal.App.4th 212, 221–222 [forfeiture doctrine applies to claim of due process violation].) Moreover, rule 26 of the Federal Rules of Civil Procedure does not apply in these state court proceedings.

Third, Hickman contends that Officer Fontanez's phase one trial testimony was not credible because it conflicted with the accident response timeline reflected in the call detail report, was "internally inconsistent," and contradicted his pretrial declaration. Hickman's timeline argument, however, relies on his own, lay interpretation of codes and other notations in the call detail report. Neither Officer Fontanez nor Abdur-Rahim, the only trial witnesses qualified to interpret the report, provided pertinent testimony on this topic.

Moreover, although Hickman's counsel engaged in significant cross-examination of Officer Fontanez—including with respect to his pretrial declaration—the trial court credited Officer Fontanez's testimony. And in reviewing a trial court's factual findings in a statement of decision following a bench trial, " '[i]t is not our role as [the appellate] court to reweigh the evidence or to assess witness credibility.' " (*RSCR Inland, Inc. v. State Dept. of Public Health* (2019) 42 Cal.App.5th 122, 131.)[8] Hickman is mistaken in arguing

---

[8] Hickman does not dispute that, if credited, Officer Fontanez's testimony constitutes substantial evidence supporting the trial court's factual finding that Hickman was riding a 2003 Harley Davidson at the time of the accident. (See, e.g., *Newman v. Casey* (2024) 99 Cal.App.5th 359, 375 ["[u]nder the substantial evidence standard, the testimony of even one witness may support a finding based thereon"].) We therefore need not address the City's argument that Hickman has provided an inadequate record for purposes of substantial evidence review.

that, under *United States v. United States Gypsum Co.* (1948) 333 U.S. 364, we should review the trial court's credibility findings for "clear error." *Gypsum* involves the "clearly erroneous" standard of review set forth in rule 52 of the Federal Rules of Civil Procedure (see *Gypsum*, *supra*, 333 U.S. at pp. 394–395), a rule that has no application in this case, where we must apply California's Code of Civil Procedure.

Fourth, Hickman makes the conclusory assertion that the trial "was tainted by . . . judicial bias." Because he fails to provide any "cogent argument supported by legal analysis and citation to the record" with respect to this contention, we treat the point as forfeited. (*Santa Monica*, *supra*, 211 Cal.App.4th at p. 287.)

Fifth, and finally, Hickman urges that he is entitled to relief pursuant to "Rule 60(b)(3)." We assume this is a reference to rule 60(b)(3) of the Federal Rules of Civil Procedure, which concerns the grounds for relief from a final judgment in federal proceedings. (See Fed. Rules Civ. Proc., rule 60(b)(3).) That rule has no application in this state court action.

Accordingly, we conclude that Hickman has failed to demonstrate any basis for reversing the judgment in favor of the City.

## DISPOSITION

The judgment is affirmed.  Respondent is awarded its costs on appeal.

<u>NOT TO BE PUBLISHED</u>.


ROTHSCHILD, P. J.

We concur:


BENDIX, J.


M. KIM, J.